John HARRIS, Plaintiff,

v.

William MERWIN, Richard W.
DelGuidice, and James
Kalas, Defendants.

No. 93–CV–0699.

United States District Court,
N.D. New York.

Oct. 25, 1995.

Jack J. Sissman, P.C., Albany, New York, for Plaintiff (Jack J. Sissman, of counsel).

Dennis C. Vacco, Attorney General of the State of New York, Albany, New York, for Defendants (Darren O'Connor, Assistant Attorney General, of counsel).

## MEMORANDUM, DECISION, AND ORDER

McAVOY, Chief Judge.

Plaintiff, a former assistant professor at the State University of New York in Potsdam ("SUNY Potsdam"), filed this civil rights action pursuant to 42 U.S.C. § 1983, seeking full reinstatement, backpay, and compensatory and punitive damages. He claims that defendants, SUNY Potsdam Administrators, denied him tenure in retaliation for exercising his First Amendment rights. Defendants filed a motion for summary judgment pursuant to Fed.R.Civ.Pro. 56. The motion is granted with respect to plaintiff's claim that defendants fired him in retaliation for exercising his free speech rights.

### I. Background

#### A. Facts

SUNY Potsdam hired plaintiff in September, 1985 as an assistant professor in the Department of Computer and Information Sciences ("Computer Department"). Plaintiff alleges that this was a "tenure track position," which in the typical case means that in the sixth year of employment, the assistant professor undergoes an evaluation to determine whether he or she will receive tenure or a seventh and final year-long contract. SUNY Potsdam renewed plaintiff's contract five times.

In May, 1989, Defendant DelGuidice, then the Dean of Liberal Studies, allegedly appointed David Valentine to serve as Chairman of the Computer Department. Defendant Kalas, then the Acting Provost, approved Valentine's appointment. Ds' Mem. p. 5. Plaintiff characterizes Valentine at the time of his appointment as "an untenured lecturer, without academic rank" who did not hold a Ph.D.Am.Compl. ¶¶ 18–19.

Beginning in May, 1989, plaintiff "on numerous occasions, as well as 3 other members of [the Computer Department] spoke out publicly against the governance of the 'Computer Department' by individuals without 'Academic Rank'." Am.Compl. ¶ 21. Plaintiff asked his union, United University Professors ("the Union"), to help resolve the problem. The Union addressed its concerns about Valentine's appointment to Defendant Merwin, who became the President of SUNY Potsdam in the fall of 1989, but he allegedly responded with inaction. An external review team evaluated the Computer Department in November, 1989, and allegedly concluded that "Valentine was *not* an appropriate" Department Chairman. *Id.* ¶ 26. Defendant Merwin allegedly took no action in response to the external review. In February, 1990, SUNY Potsdam students participated in an open meeting during which they asked Defendant Merwin about Valentine's qualifications for his position. Soon after a local newspaper published a story about the meeting, Valentine resigned as Chairman of the Computer Department. Defendant DelGuidice succeeded him.

Plaintiff alleges that "[o]n a number of occasions prior to May 31, 1990, defendants Merwin, DelGuidice and Kalas spoke to [him] and voiced their discontent and annoyance with [his] activities, and each warned plaintiff against his speaking out on [Valentine's appointment]." *Id.* ¶ 33. On May 31st, after plaintiff had worked at SUNY Potsdam for five years, defendants allegedly fired him by refusing to renew his contract for a sixth year. *Id.* ¶ 36. Their asserted reason for denying plaintiff continued employment was that he lacked the support of the Computer Department. *Id.* ¶ 37. Plaintiff calls this "pretext" and claims that defendants actually fired him "in retaliation for his having spoken out on numerous occasions about the propriety of the Valentine appointment and the governance of the 'Computer Department' and for his having participated with the [Union] in seeking corrective measures," in violation of his First Amendment rights to free speech and freedom of association. *Id.* ¶¶ 41–44.

### B. Defendants' Motion for Summary Judgment

Defendants filed a motion for summary judgment on the grounds that plaintiff's complaints about Valentine are unprotected by the First Amendment and that even if they are protected, defendants are entitled to qualified immunity. Defendants in their motion papers never refer specifically to plaintiff's freedom of association claim. After a number of extensions and an adjournment, plaintiff filed affidavits in response to the motion, but failed to file a memorandum of law.

### C. Summary Judgment Standard

Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand,* 807 F.2d 44 (3d Cir.1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The Court has examined plaintiff's complaint in light of the preceding considerations.

### II. Discussion

#### A. Free Speech

Government employees who claim that they were terminated in retaliation for exercising their free speech rights must establish three elements in order to succeed. First, they must show that the speech is "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). Second, even if

the speech does touch a matter of public concern, the employer must establish that the speech's potential to disrupt the employer's operations outweighs the value of the speech. *Jeffries v. Harleston,* 52 F.3d 9, 13 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 173, 133 L.Ed.2d 114 (1995). *See also Waters v. Churchill,* 511 U.S. ——, ——, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994) (plurality opinion); *Pickering v. Board of Ed.,* 391 U.S. 563, 569, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1059 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993). Third, the plaintiff must show that the speech was a substantial or motivating factor behind the discharge. *Mount Healthy City Bd. of Ed. of Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *see also White Plains,* 991 F.2d at 1058. If the plaintiff succeeds in showing that his or her speech was a substantial or motivating factor in the defendant's termination decision, then the defendant must have an opportunity to prove that it would have reached the same decision even if the speech in question had never occurred. *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *White Plains,* 991 F.2d at 1059.

■ Plaintiff has failed to establish that his speech concerned a matter of public concern. "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689. The Court determines as matter of law whether the speech at issue touches a matter of public concern by examining its "content, form, and context . . . as revealed by the whole record." *Id.* at 147–48 & n. 7, 103 S.Ct. at 1690–91 & n. 7.

In *Connick,* the plaintiff drafted and circulated a questionnaire designed to elicit from her colleagues their views about working conditions at the New Orleans District Attorney's Office. The questions pertained to office morale, grievance procedures, confidence in various supervisors, and pressure to work on political campaigns. With the exception of questions about the last-mentioned topic, the Supreme Court refused to classify the questionnaire as related to matters of public concern. The rest of the questions simply reflected "one employee's dissatisfaction with a transfer and an attempt to turn that dissatisfaction into a cause celebre"—they neither informed the public that the District Attorney's Office had failed to discharge its responsibility to prosecute crimes nor brought to light "actual or potential wrongdoing or breach of public trust." *Id.* at 148, 103 S.Ct. at 1690.

Federal courts have consistently held that the First Amendment does not protect disgruntled public employees who voice essentially personal complaints about their employers. For example, in *Colburn v. Trustees of Indiana University,* 973 F.2d 581 (7th Cir.1992), a case whose facts are strikingly similar to those presented here, the court held that the plaintiffs' speech did not involve a matter of public concern where they accused the members of an academic department at a public university of basing their evaluations of colleagues' requests for career advancement on personal biases. The court noted that although the public would probably be displeased to learn about such an evaluation process:

> the fact that the issue could be "interesting" to the community does not make it an issue of public concern. Plaintiffs' statements revealed that individual biases within the . . . Department's peer review process may have been present to excess, but they did not attempt to expose some malfeasance that would directly affect the community at large.

*Id.* at 586 (citations omitted). The court went on to note that the plaintiffs aired their comments in letters to school officials, rather than in a public forum, and to discuss the relationship between the speakers' motives and the public concern factor: "[W]here the overriding reason for the speech is the concerns of a few individuals whose careers may be on the line, the speech looks much more like an internal personal dispute than an

effort to make the public aware of wrongdoing." *Id.* at 587.

Second Circuit courts are in accord. In *Blum v. Schlegel,* 830 F.Supp. 712, 730 (W.D.N.Y.), *aff'd,* 18 F.3d 1005, 1012 n. 6 (2d Cir.1994), the court held that a law school professor's letters to faculty members concerning his career advancement and school policies and curriculum were personal gripes by a disgruntled employee that "unquestionably do not fall within the protection of the First Amendment."

In two cases brought by plaintiffs who were terminated from non-academic jobs, Second Circuit courts reached similar holdings about speech that does not implicate matters of public concern. The court held in *Ezekwo v. N.Y.C. Health and Hosps. Corp.,* 940 F.2d 775, 777–78, 781 (2d Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991), that the complaints of a doctor employed by a public hospital about the failure of physicians and lecturers to meet schedules, the treatment and evaluation she received from her superiors, her lack of opportunity to perform surgery, and the inadequate teaching methods of attending physicians, *inter alia,* were primarily personal in nature and did not relate to any matters of public concern. Finally, this Court held in *Saraceno v. City of Utica,* 733 F.Supp. 538, 542 (N.D.N.Y.1990), that a municipal water board employee's letter to the board of commissioners expressing the employees' dissatisfaction with how they were treated, their concern over the possibility of losing their jobs, and their low morale, did not touch upon matters of public concern.

Even construed in the light most favorable to plaintiff, his complaint alleges merely that he complained, somewhat boisterously, about the appointment of Valentine to the chairmanship of the Computer Department. This is precisely the sort of personal grievance by a disgruntled public employee that Second Circuit courts have refused to characterize as speech protected by the First Amendment. Plaintiff nowhere alleges, and there is no evidence to suggest, that he spoke out about any wrongdoing, fraud, or abuse on the part of SUNY Potsdam officials that the general community would consider important. *See,*

*e.g., Jeffries v. Harleston,* 21 F.3d 1238, 1245 (2d Cir.) (stating that professor's off-campus speech, which criticized public school curriculum for bias and discussed history of black oppression, involved issues of public concern), *vacated on other grounds,* —— U.S. ——, 115 S.Ct. 502, 130 L.Ed.2d 411 (1994); *Blum v. Schlegel,* 18 F.3d 1005, 1012 (2d Cir.1994) (same re law professor's speech "advocating legalization of marijuana, criticizing national drug control policy, and debating civil disobedience"); *Frank v. Relin,* 1 F.3d 1317, 1329 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993) (same re employee's conversations about District Attorney's Office personnel wrongfully suppressing exculpatory information in criminal cases); *Vasbinder v. Ambach,* 926 F.2d 1333, 1335–36, 1340 (2d Cir.1991) (same re plaintiff's report to FBI of fraud, theft, and misallocation of public funds in federally funded program); *Dobosz v. Walsh,* 892 F.2d 1135, 1137, 1141 (2d Cir.1989) (same re police officer's cooperation with FBI and testimony against fellow officer as to possible planting of knife on person shot by latter officer); *Rookard v. Health and Hosp. Corp.,* 710 F.2d 41, 46 (2d Cir.1983) (same re public employee's private report to agency's inspector general of corrupt and wasteful practices at large municipal hospital).

Plaintiff alleges in his responsive affidavit that "other professors" and the Union spoke out against Valentine's appointment. Harris Aff. ¶ 22. In his amended complaint, plaintiff alleges that three other professors joined him in speaking out "publicly" in opposition to the appointment. Am. Compl. ¶ 21. These allegations do not alter the Court's conclusion. The First Amendment may protect employee speech communicated in a private forum and addressed only to others in the workplace, *Givhan v. Western Line Consol. Sch. Dist.,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1977), but only if the speech relates to a matter of public concern. Whether one professor or four of them privately express to the administration of a public university their concerns about a colleague's supposed lack of qualifications for the job to which he or she is appointed, their speech does not implicate

matters of public concern. Furthermore, plaintiff supplies no evidence to support his conclusory allegation that he and the other professors voiced their opposition "publicly." Even if they did express their views in a public forum, that fact does not automatically render their speech a matter of public concern. *Id.* at 414–415, 99 S.Ct. at 695–96.

 In his responsive affidavit, plaintiff also asserts that the issues about which he spoke were not "personal issues but rather issues of general academic interest that effected [sic] not only me but others in the Department, affected the quality of teaching and research and affected the students who were interested in studying Computer Science." Harris Aff. ¶ 41. Even if plaintiff's speech touched on matters of importance to SUNY Potsdam's Computer Department, its impact on this group is merely relevant to, but not determinative of, the issue of whether the speech concerned a matter of importance to the community at large. *See Colburn,* 973 F.2d at 587. As in *Colburn,* the inter-departmental debate over Valentine's appointment and his efforts to deemphasize research activities was "principally of importance to the few faculty members who had to tolerate the bickering." *Id.* If this Court were to hold that speech of import mainly to the members of an academic department constituted speech touching a matter of public concern, then every inter-departmental squabble about faculty appointments would implicate the First Amendment. The Court will not interfere with a state university's hiring and firing processes under the guise of the First Amendment whenever it denies tenure to an assistant professor who at one time complained about an allegedly unremedied administrative error. *See, e.g., Connick,* 461 U.S. at 146, 149, 103 S.Ct. at 1689, 1691.

 Finally, plaintiff argues in his responsive affidavit that the local press's decision to publish an article about the exchange between SUNY Potsdam students and Defendant Merwin demonstrates that plaintiff's speech touched upon matters of public concern. Harris Aff. ¶ 22. Assuming that a local newspaper published such an article, this fact is insufficient to render plaintiff's

speech protected by the First Amendment. Two reasons support this conclusion.

First, prior to the commencement of litigation in *Connick,* the local papers had reported stories about the internal operations of the New Orleans District Attorney's Office. That fact did not alter the Supreme Court's determination that the majority of questions in Meyers' questionnaire failed to implicate matters of public concern. *See Connick,* 461 U.S. at 160 n. 2, 103 S.Ct. at 1697 n. 2. (Brennan, J., dissenting).

 Second, the newspaper article is insufficient to establish that plaintiff's speech touched on matters of public concern if his "motive for the speech is private and personal. . . . The determinative question is whether [the speaker's interest in matters of public concern] arises from the speaker's status as a public citizen or from the speaker's status as a public employee." *Blum,* 18 F.3d at 1012. *See also Connick,* 461 U.S. at 147, 103 S.Ct. at 1690; *Colburn,* 973 F.2d at 588. There is ample evidence in the record to show that plaintiff opposed Valentine's appointment to the chairmanship of the Computer Department for reasons having to do primarily with his role as a public employee. For instance, plaintiff's professional interests tended towards research, whereas Valentine encouraged him to spend more time teaching. Harris aff. ¶¶ 9, 12. Despite plaintiff's insistence that "[m]y personal situation was not involved at all in the protest against the Valentine appointment," *id.* at 23, other statements of his indicate that his chances for securing tenure would have improved if someone other than Valentine had occupied the departmental chair. *Id.* at ¶ 9; Am.Compl. ¶ 38. Defendants present uncontroverted evidence that in 1989, the nine or ten members of the Computer Department had split into two rival factions, with plaintiff in the minority group of four and Valentine in the majority. Ds' Mem. 1. Plaintiff may well have concluded that with Valentine removed from the chairmanship, his chances of forming a majority coalition would improve. Finally, plaintiff's assertion that his protests against the Valentine appointment were motivated by "my sincere belief . . . that he was not fit to be the Chairman" supports rather than

undermines the conclusion that his interest in speaking out against Valentine's chairmanship arose primarily from his status as a public employee. Harris aff. ¶ 23. In sum, the record indicates that plaintiff lodged his complaints primarily in his role as a SUNY Potsdam employee and not in his role as a citizen.

For all of the above reasons, the Court grants defendants' motion for summary judgment with respect to plaintiff's claim that defendants fired him for exercising his First Amendment free speech rights. Summary judgment with respect to plaintiff's freedom of association claim, however, is more difficult to resolve.

**B. Freedom of Association**

Plaintiff alleges that defendants terminated him in retaliation for enlisting the aid of his union in his efforts to remove Valentine from the chairmanship of the Computer Department. As far as the Court can divine from plaintiff's affidavits, he claims that the First Amendment's freedom of association clause forbids government employers to retaliate against employees for participating in union activities. Defendants label Point One of their motion for summary judgment, "Plaintiff Cannot Establish that the Termination of His Employment Violated His First Amendment Rights," but they inadequately brief the freedom of association issue. In the portion of their memorandum devoted to the issue of qualified immunity, defendants ignore plaintiff's freedom of association claim. For his part, plaintiff has never argued in a memorandum of law or cited cases to support his freedom of association claim. Because the Court cannot decide this issue in the absence of legal arguments from either party, it will give each side an additional opportunity to brief it.

**III. Conclusion**

Defendants' motion for summary judgment as to plaintiff's claim that he was fired in retaliation for exercising his free speech rights is GRANTED.

Assuming that defendants seek summary judgment on plaintiff's freedom of association claim, they have fourteen (14) days from the date of this order to file with the clerk's office and to serve upon plaintiff a supplemental memorandum of law, not to exceed ten (10) pages, in support of their motion for summary judgment as to plaintiff's freedom of association claim. After receiving defendants' memorandum, plaintiff will have seven (7) days from the date of its receipt to file with the clerk's office and to serve upon defendants a reply memorandum of law, not to exceed ten (10) pages. If defendants file a supplemental memorandum of law and plaintiff fails to respond in accordance with this order, then the Court, pursuant to Local Rule 7.1(b), will deem him to have consented to the Court's granting defendants' motion for summary judgment on his freedom of association claim.

**IT IS SO ORDERED.**