**Dr. Joseph E. BOYETT, Plaintiff,**

v.

**TROY STATE UNIVERSITY AT MONTGOMERY; et al., Defendants.**

**Civil Action No. 96–A–1222–N.**

United States District Court, M.D. Alabama, Northern Division.

July 9, 1997.

---

Alvin T. Prestwood, Daniel L. Feinstein, Volz, Prestwood, Hanan & Sizemore, Montgomery, AL, for Plaintiff.

William F. Gardner, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Samuel Adams, Montgomery, AL, for Defendants.

## *MEMORANDUM AND ORDER*

Albritton, District Judge.

### I. *INTRODUCTION*

This cause is before the court on a Motion for Partial Summary Judgment filed by Troy State University at Montgomery ("TSUM") and by Dr. Jack Hawkins ("Hawkins"), Dr. Glenda McGaha–Curry ("Curry"), Dr. Livingston Alexander ("Alexander"), and Dr. Matthew Mariano ("Mariano"), in their individual and official capacities (collectively "Defendants").

The Plaintiff, Dr. Joseph E. Boyett ("Plaintiff") originally filed a Complaint in the Circuit Court of Montgomery County on July 11, 1996. The Plaintiff brought four counts against the Defendants alleging that they violated the Plaintiff's right of due process of law under the Fourteenth Amendment to the United States Constitution and the Alabama Constitution of 1901, of Free Speech under the First Amendment to the United States Constitution and the Alabama Constitution of 1901, of substantive due process under the Fourteenth Amendment to the United States Constitution and the Alabama Constitution of 1901, and that the Defendants violated the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 et seq.[1]

The Defendants filed a Notice of Removal in this court on August 6, 1996. The Defendants subsequently filed a Motion for Partial Summary Judgment on April 21, 1997.

For the reasons to be discussed, the Defendants' Motion for Partial Summary Judgment is due to be GRANTED.

### II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is prop-

er "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. at 2552–53.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the

---

1. The Defendants have not moved for summary judgment on the ADEA claim as against TSUM. The Plaintiff concedes that to the extent that any ADEA claim was alleged against the individual

defendants, they are entitled to summary judgment on the ADEA claim. Plaintiff's Brief in Response to the Motion for Partial Summary Judgment, page 7.

court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. *FACTS*

The submissions of the parties establish the following facts:

The Plaintiff started his employment with TSUM in September of 1990 as an Associate Professor in the Computer Information Sciences/Mathematics Department ("CIS/Math"). The Plaintiff also served as Dean of the CIS division for a period of time. During the time that he was employed with TSUM, the Plaintiff was offered successive one year contracts. The last contract he had with TSUM ended on August 31, 1996.

In January of 1995, the Plaintiff announced that he was resigning as Dean of the CIS division. He was informed in June of 1995 that Defendant Mariano had been asked to assume the position of Dean in September of 1995. While the Plaintiff was still acting as Dean of the CIS Division, he gave unfavorable reviews of Defendant Mariano's performance in teaching. The Plaintiff alleges that during his tenure with TSUM he spoke on matters of purported public concern including comments in an attempt to gain additional funds for his division, comments in connection with faculty review and evaluation, and comments on election procedures used for the Graduate Council, and other matters. The Plaintiff alleges that the Defendants retaliated against him for these comments by taking action which resulted in denial of his reappointment to TSUM.

On December 12, 1995, Defendant Alexander, Vice President of Academic Affairs at TSUM, recommended to Defendant Curry, President of TSUM, that the University not renew the Plaintiff's appointment. Defendant Alexander subsequently met with the Plaintiff and advised him that his contract would not be renewed. The Plaintiff filed a grievance alleging that TSUM did not have a legitimate reason to deny him an appointment and that he had been denied due process.

### IV. *DISCUSSION*

The Plaintiff alleges that the Defendants violated his rights to procedural due process and substantive due process of law under the Fourteenth Amendment and violated the First Amendment of the United States Constitution. When an individual seeks redress in the courts for a violation of his constitutional rights, he may not sue directly under the Constitution, but must make his claim under 42 U.S.C. § 1983.

#### 1. § 1983 Claims Against TSUM

■ The Defendants argue that the § 1983 claims against TSUM are due to be dismissed because TSUM is immune from suit under the Eleventh Amendment to the Constitution of the United States. The court first notes that a state is not considered to be a "person" for purposes of § 1983 actions. *Will v. Michigan Department of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989). TSUM is an instrumentality of the state. *Harden v. Adams*, 760 F.2d 1158 (11th Cir.1985); *Kelley v. Troy State University*, 923 F.Supp. 1494 (M.D.Ala. 1996). In addition, under the Eleventh Amendment,

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state.

U.S.C. Const. Amend. XI. Where a party attempts to sue a state in federal court, the Eleventh Amendment prohibits the federal court from exercising jurisdiction over the suit, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984); *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139,

1145, 59 L.Ed.2d 358 (1979). However, neither one of these exceptions applies to the Plaintiff's § 1983 claims against TSUM. Congress has not abrogated Eleventh Amendment immunity in § 1983 cases. *Quern,* 440 U.S. at 345, 99 S.Ct. at 1147. The State of Alabama also has not waived its immunity. *Free v. Granger,* 887 F.2d 1552, 1557 (11 th Cir.1989). Consequently, the Defendants are entitled to summary judgment on the § 1983 claims against TSUM.

### 2. § 1983 Claims Against State Officials in Their Official Capacities

■ The Plaintiff has asserted § 1983 claims against the state officials in their official capacities. Neither a state nor its officials acting in their official capacities are "persons" under § 1983. *Will,* 491 U.S. at 70, 109 S.Ct. at 2311–12. State agents in their official capacities, however, may be properly subject to prospective injunctive relief under § 1983 because such actions are not treated as actions against the State and are not barred by the Eleventh Amendment. *Cross v. Alabama,* 49 F.3d 1490, 1503 (11 th Cir.1995). Therefore, to the extent that the Plaintiff has established a violation of his constitutional rights,[2] the Defendants are entitled to summary judgment on the Plaintiff's § 1983 official capacity claims for compensatory and punitive damages.

### 3. Claims Against the State Officials in Their Individual Capacities

■ A plaintiff who sues an individual under § 1983 "seek[s] to impose personal liability upon a government official for actions he takes under color of state law." *Graham,* 473 U.S. at 165, 105 S.Ct. at 3105. The Plaintiff has brought § 1983 claims against the state officials for Constitutional violations which include alleged deprivations of proce-

dural due process, substantive due process, and the right of free speech under the First Amendment.[3]

#### a. Procedural Due Process

■ The Plaintiff has alleged that he was deprived of a property interest and a liberty interest without due process of law. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law...." U.S.C. Const. Amend. 14 § 1. Property interests are not created by the Constitution but by existing rules or understandings which stem from an independent source such as state law and arise only where the plaintiff demonstrates a "legitimate claim of entitlement." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ The Plaintiff has stated that the Defendants violated their own personnel policies, apparently arguing that this violation deprived him of due process. The Defendants, however, argue that, even assuming a violation of a personnel policy, such a violation is not itself a constitutional violation. The Eleventh Circuit has explained that merely because a state law procedure exists does not mean that violation of that procedure is a due process violation under the federal constitution. *Harris v. Birmingham Bd. of Ed.,* 817 F.2d 1525, 1528 (11 th Cir. 1987); *see also Black v. City of Auburn,* 857 F.Supp. 1540 (M.D.Ala.1994) ("noncompliance with personnel policies is not a per se denial of procedural due process") *aff'd,* 56 F.3d 1391 (11th Cir.1995). Instead, this court must determine whether there is a property interest before an inquiry may be conducted into whether the requisite constitutional process was afforded.

■ The Plaintiff has apparently argued that he had an implicit property right

---

**2.** The merits of the Plaintiff's constitutional claims are addressed *infra.*

**3.** The Plaintiff concedes in his arguments to the court that Defendant Hawkins, Chancellor of the Troy State University System, in entitled to summary judgment in his individual capacity. Plaintiff's Brief in Response to the Motion for Partial

Summary Judgment, page 14. The Defendants also point out that Defendant Mariano cannot be required to provide prospective injunctive relief since he no longer holds the position of Dean. Defendants' Brief in Support of Partial Summary Judgment, page 90.

to continued employment. The Plaintiff has provided no evidence to refute the evidence that he was a non-tenured employee who was appointed to successive year contracts. The Supreme Court has explained that where, as here, a contract for employment specifically provides that it is to terminate on a specific date, the terms of the appointment secure no interest in re-employment. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. However, state statutes, rules, regulations, and mutually explicit understandings can also create property interests. *See Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). Whether these sources create a property interest must be decided by reference to state law. *Bishop,* 426 U.S. at 344, 96 S.Ct. at 2077.

The Plaintiff acknowledges that an employee-at-will has no right to procedural due process. However, the Plaintiff has sought to rely on the personnel policies of TSUM to establish that he was not an at-will employee under Alabama law because his reappointment could only be denied "for cause." The Plaintiff explained in deposition that he felt that the personnel policies of TSUM entitled him to continued appointment unless a legitimate reason was given for his non-renewal. Boyett's Deposition, page 120, lines 10–22. The Plaintiff has pointed to § 3.7.1 of the TSUM Faculty Handbook which lists examples of legitimate reasons for non-reappointment. The Defendants argue, however, that the non-reappointment section cannot be read to confer any right of reappointment since the examples of legitimate reasons for non-reappointment are not an exhaustive list.

 The Eleventh Circuit has previously addressed an argument similar to that made by the Plaintiff *See Blanton v. Griel Memorial Psychiatric Hospital,* 758 F.2d 1540 (11th Cir.1985). In *Blanton,* the Plaintiff pointed to an Alabama regulation which provided specific reasons for discharge, and argued that the specified reasons were analogous to allowing termination only for cause. *Id.* at 1543. The court rejected the Plaintiff's argument because it found, upon a reading of the regulations in the entirety, that the regulations were clearly designed to offer a lesser expectation of continued employment than that offered to permanent employees. *Id.* at 1543. Similarly, in this case, the Handbook draws a clear distinction between tenured and non-tenured employees. In § 3.7.4, the Faculty Handbook states that tenured employees will be dismissed for cause, while in § 3.7.1, the Faculty Handbook states that a notice of non-reappointment is not a dismissal for cause.[4] *See Lovelace v. Southeastern Massachusetts Univ.,* 793 F.2d 419, 422 (1st Cir.1986)(holding that a statement that recommendations for nonrenewal must be justified does not signify a relinquishment of the university's normal discretion with respect to non-tenured employees). In addition, the reasons for non-reappointment in the TSUM Faculty Handbook are explicitly identified as not being an exhaustive list. *See* Faculty Handbook § 3.7.1 ("Legitimate reasons for nonreappointment may include, but would not necessarily be limited to ..."). Furthermore, the Faculty Handbook states, in the provision regarding severance of employment within the context of non-reappointment, that "a severance prerogative rests with both parties." Faculty Handbook § 3.7.1. A court in this district has previously reasoned that there is no intent to create a property interest where a handbook provided a list of reasons for dismissal that was not all-inclusive, reserved the right to terminate for non-specified reasons, and reserved the mutual privilege of terminating the employment relationship at any time. *See Kelsey v. Lee County Hospital Bd.,* No, 82–127–E, 1983 WL 14918 (M.D.Ala. Decem-

---

4. The Plaintiff states in a footnote that the Faculty Handbook is ambiguous because it uses the phrase "due process" and, therefore, should be construed against the drafter. Apparently, the Plaintiff is arguing that inclusion of the phrase "due process" means that TSUM intended to create a property interest in re-appointment. However, the court finds that under the *Blanton* requirement that the handbook be read in its entirety, the handbook is not ambiguous, and that TSUM's intent was to distinguish between tenured and appointed employees.

ber 2, 1983), *aff'd.* 742 F.2d 1465 (11th Cir. 1984). Therefore, the court concludes that the TSUM Faculty Handbook did not create a legitimate expectation that reappointment could be denied only for cause.

The Plaintiff has also sought to rely on other provisions in the Faculty Handbook to establish that he had a property interest in his renewed appointment. The Plaintiff has argued that the court need not determine whether there is an implicit property right in this case because the TSUM Faculty Handbook explicitly states that nonrenewal must comply with "due process." The Plaintiff points to § 3.9.2., which states that a grievance can be filed for denial of due process in nonrenewal of a contract, and § 3.7.1, which states that the Dean and Vice–President of Academic Affairs have wide latitude with regard to reappointments, consistent with due process. Although the Plaintiff does not explain his argument, it appears that the Plaintiff is arguing that TSUM created a property right by promising to comply with procedures consistent with "due process," and then deprived that right in violation of due process.

The Defendants have pointed to a case analyzing a similar argument which was decided by the Tenth Circuit. *See Bunger v. University of Oklahoma Board of Regents,* 95 F.3d 987 (10th Cir.1996). In *Bunger,* nontenured employees argued that the procedural guidelines in the Faculty Handbook created a property interest in reappointment of which they could only be divested according to the specified procedures. The court rejected this argument, holding that the university's promise to follow certain procedures in considering reappointment did not create a property interest in reappointment. *Id.* at 991. The court relied on reasoning from the United States Supreme Court that " 'property' cannot be defined by the procedures provided for its deprivation anymore than can life or liberty." *Id.* (citing *Cleveland Board of Education v. Loudermill,* 470 U.S. 532,

541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985)).

 The Eleventh Circuit has also recognized this distinction between procedure and a substantive right. *See Harris v. Birmingham Bd. of Ed.,* 817 F.2d 1525, 1528 (11th Cir.1987). The court explained that "[a]lthough the state statutory notice requirement is stated in mandatory language, it is a purely procedural requirement and not a substantive predicate to termination which gives [the plaintiff] a protected liberty or property right in receiving a notice which itself detailed the reasons for termination." *Id.* at 1527.[5] Because a promised procedure cannot, by itself, confer a property right, the court finds that the Plaintiff has failed to establish that he had a legitimate entitlement to continued employment based on Faculty Handbook procedural provisions.

 The Plaintiff has also sought to bring a claim for deprivation of due process based on an alleged liberty interest. To prove a deprivation of liberty triggering due process rights, a government employee must "establish that his termination was attended by stigmatizing charges which 'might seriously damage his standing and associations in his community' or foreclose 'his freedom to take advantage of other employment opportunities.' " *Sullivan v. School Board of Pinellas County,* 773 F.2d 1182 (11th Cir.1985) (citation omitted). This liberty interest has been qualified by the United States Supreme Court, however, so that where there is no public disclosure of the reasons for discharging a public employee, no liberty interest is implicated *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976).

 The Defendants have moved for summary judgment on the deprivation of a liberty interest claim, arguing that the uncontested facts reveal that no stigmatizing statements were made about the Plaintiff and, even if any statements were made, no

---

5. To the extent that the Plaintiff also seeks to argue that he had a protected interest in having specific reasons be given to him as a justification for his discharge based on the procedure set forth in the Faculty Handbook, this argument is also unavailing. *See Harris,* 817 F.2d at 1527.

statements were ever made public by the Defendants. The Plaintiff has not provided any evidence in response to the Defendants' motion with respect to the deprivation of a liberty interest claim. Accordingly, because the Plaintiff has failed to demonstrate that there is a genuine issue of fact as to whether stigmatizing statements were made public by the Defendants, the court concludes that the Defendants are entitled to summary judgment on the Plaintiff's claim for deprivation of a liberty interest without due process.

### b. Substantive Due Process

In addition to his procedural due process claim, the Plaintiff seeks to bring a claim for denial of substantive due process, arguing that the Defendants' actions were arbitrary, unreasonable, and capricious. A finding that a right merits substantive due process protection means that the right is protected "against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068–69, 117 L.Ed.2d 261 (1992) (citation omitted). Formerly, under precedent of the Eleventh Circuit, a public employee could assert a claim for pretextual termination under the substantive component of the Due Process clause. However, as the Defendants point out, the Eleventh Circuit reversed this precedent by holding that, in non-legislative cases, only procedural due process claims are available to pretextually terminated employees. *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir.1994), *cert. denied sub nom.*, *McKinney v. Osceola County Bd. of County Com'rs*, 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). In *McKinney*, the court reasoned that "Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection." *Id.* at 1560.

The Plaintiff asks this court to distinguish *McKinney* because the Plaintiff had a fundamental right to practice his chosen profession. However, in the portion of the Complaint in which he alleges a violation of substantive due process, the Plaintiff states that the Defendants acted arbitrarily and failed to follow their own ordained procedures. Complaint, page 6. The Plaintiff's claim based on his perceived right to a notice and hearing under the policies of TSUM, an alleged deprivation of procedural due process, is therefore barred under *McKinney*.

Furthermore, to the extent that the Plaintiff now seeks to bring a claim based on a fundamental right, he has failed to establish such a claim. As the Defendants point out, the court in *McKinney* reiterated that to be afforded substantive due process, the right must be so fundamental that our democratic society and its inherent freedoms would be lost if that right were to be violated. *Id.* at 1561. The Supreme Court has recognized that the right to follow a chosen profession free from unreasonable government interference comes within the "liberty" and "property" concepts of the Fifth Amendment. *See Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). However, deprivation of this right cannot be established unless the plaintiff has been banned from engaging in his profession with any employer. *See Pirolo v. City of Clearwater*, 711 F.2d 1006, 1011 (11th Cir.1983); *see also Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209, 1217 n. 5 (11th Cir.1995). Therefore, even if this right were a valid basis upon which to distinguish *McKinney*, it would not be applicable in this case, since no evidence has been presented that the Plaintiff has been precluded from pursuing his profession with all employers. Therefore, the Defendants are entitled to summary judgment on the substantive due process claim.[6]

### c. First Amendment

The Plaintiff has also asserted that the Defendants violated his First Amend-

---

6. The Plaintiff also argues that even if *McKinney* precludes his substantive due process claim under federal law, that he has a right to substantive due process under the Alabama Constitution.

The Plaintiff has failed to point to any Alabama statutory or decisional law under which such a claim for violation of the Alabama Constitution may be brought. Furthermore, the Defendants

ment right to freedom of speech. A claim by a public employee that he was punished for exercising his right to freedom of speech requires the court to conduct a four part inquiry. First, the court must determine whether the alleged speech implicated a matter of public concern. *Watkins v. Bowden,* 105 F.3d 1344 (11ᵗʰ Cir.1997) (citation omitted). If so, the court must weigh the employee's First Amendment interest against the interest of the public employer. *Id.* at 1352; *Pickering v. Bd. of Ed.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968) (the court must balance "an employee's interest as a citizen in commenting on matters of public concern ... against the state's interest as an employer 'in promoting the efficiency of the public services it performs through its employees.'"). If the employee prevails on the balancing test, the fact-finder determines whether the employee's speech was a substantial motivating factor in the employment decision. *Watkins,* 105 F.3d at 1352. Then, the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *Id.*

 In deciding whether an employee's speech addresses a matter of public concern, the court must look to the content, form, and context of the employee's speech. *Bryson v. City of Waycross,* 888 F.2d 1562 (11ᵗʰ Cir.1989). Courts "consider whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee." *Morgan v. Ford,* 6 F.3d 750 (11ᵗʰ Cir.1993), *cert. denied,* 512 U.S. 1221, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994). The "First Amendment does not require a public office to be run as a roundtable

for employee complaints over internal office affairs." *Connick v. Myers,* 461 U.S. 138, 149, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983). In the Eleventh Circuit, a "public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ferrara,* 781 F.2d at 1516. Instead, to rise to a level of public concern, statements must be directed "beyond the scope of internal management." *Kurtz v. Vickrey,* 855 F.2d·723 (11ᵗʰ Cir.1988). In the context of an educational setting, "speech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection." *Maples v. Martin,* 858 F.2d 1546, 1552 (11ᵗʰ Cir.1988). A teacher's speech is a matter of public concern when it "directly affects the public's perception of the quality of education in a given academic system." *Id.* at 1553.

 In the Complaint filed in this case, the Plaintiff presents three different kinds of statements which he contends were statements on a matter of public concern. These statements include the Plaintiff's requests for funding of the TSUM CIS/Math division, comments in the annual review of another faculty member, and comments on the election procedures used for electing a faculty office. In arguments presented to the court, the Plaintiff has pointed to several additional statements which he contends were a matter of public concern, including speech against a faculty evaluation system, opposing a tenure and promotion policy, statements regarding the "future health and vitality" of the department, and a challenge to Defendant Curry on a budget process.[7] The court notes first that none of the comments allegedly made by the

---

have pointed out that state officials acting within their discretionary authority are afforded substantive immunity from suit under state law. *Tinney v. Shores,* 77 F.3d 378 (11ᵗʰ Cir.1996); *DeStafney v. University* of Alabama, 413 So.2d 391 (Ala.1981)(substantive immunity extends to university employees who are acting pursuant to their discretionary function). Therefore, the court concludes that the Defendants are entitled to summary judgment on all of the Plaintiff's purported state constitutional law claims.

7. The Plaintiff has also cited to pages 55 through 77 of Defendant Curry's deposition for the proposition that "the sole reason for her decision to terminate Boyett was his statements regarding numerous topics of concern at that public institution." Plaintiff's Brief in Response to the Motion for Partial Summary Judgment, page 8. Apparently, this evidence is offered as evidence of a causal connection, and not as additional examples of speech, since the Plaintiff has neither pointed to, nor presented arguments about, ex-

Plaintiff were voiced outside of TSUM. The court recognizes that the fact that the Plaintiff's comments were confined to TSUM is not dispositive, however, it is a factor which may be taken into account by the court. *Kurtz*, 855 F.2d at 727.

The Plaintiff asserts that his comments on the funding of the TSUM CIS/Math division were a matter of public concern. The Plaintiff has cited *Kincade v. City of Blue Springs*, 64 F.3d 389 (8th Cir. 1995), for the proposition that complaints about the misuse of public funds is a matter of public concern. While the court agrees that complaints about the misuse of public funds can be a matter of public concern, the court finds that the evidence presented by the Plaintiff does not support the Plaintiff's apparent characterization of his statements as being complaints about the misuse of funds. The evidence presented by the Plaintiff reveals that the academic units of TSUM presented their budget requests to the Council of Deans which then voted on the priority of the requests. Alexander Deposition, page 40. The Plaintiff made comments in an attempt to secure more funds for the department in which he worked. *Id.* at pages 40–41; Plaintiff's Exhibit G, Comments on the Performance of Dr. Joseph Boyett, page 1. However, there is no evidence to support an allegation that the Plaintiff was speaking out against a misuse of funds. Consequently, the court finds that the content, context, and form of the Plaintiff's comments as an employee to other TSUM employees in an attempt to get priority for funds for his department, reveals that this speech on the part of the Plaintiff is speech on an issue of internal administration and not a public concern.

With regard to his speech concerning funds for this department, the Plaintiff has also cited cases from other jurisdictions for the proposition that an employee's criticism of an employer's policies or positions on issues is a matter of public concern. Without

deciding that issue, the court finds that the Plaintiff's evidence does not support his apparent characterization that his attempts to get funding were criticism of a policy or a position of his employer. Instead, the evidence reflects that he made comments in seeking resources and support for his department within TSUM, *See* Plaintiff's Exhibit G, not that he was critical of any policies or positions taken by his employer regarding funding for the department.

The Defendants point out that the Plaintiff stated in his deposition that he felt his speech was of public concern because he sought grants which would allow the school to seek better teachers, which would lead to improvement in the quality of the students, which would in turn attract industry to the state. Boyett Deposition, page 89. However, derivative public concern arguments have been rejected by courts in this circuit. *See Ballard v. Blount*, 581 F.Supp. 160 (N.D.Ga.1983), *aff'd* 734 F.2d 1480 (11th Cir.) *cert. denied*, 469 U.S. 1086, 105 S.Ct. 590, 83 L.Ed.2d 700 (1984). In *Ballard*, the court reasoned that "[t]aken to its logical conclusion, the plaintiff's argument means that any time a person's speech will have an affect on the public, regardless of how small or unlikely that effect may be, that speech relates to a matter of public concern. This was a specific concern of the *Connick* Court, and the Court wisely rejected this identical argument." *Id.* at 164. Consequently, this court concludes that the Plaintiff's comments on the internal issue of seeking funds for a department is not a matter of public concern.

The Plaintiff has argued in brief that he made comments in reviewing faculty members. Evidence provided to the court establishes that the Plaintiff made unfavorable comments in the annual review of Defendant Mariano. The Fourth Circuit has addressed a similar First Amendment argument. *See Holland v. Rimmer*, 25 F.3d 1251 (4th Cir.1994). In *Holland*, a plaintiff made statements about and disciplined sub-

amples of speech within the cited portion of Defendant Curry's Deposition. Furthermore,

upon review of the cited section, the court finds no additional examples of speech by the Plaintiff.

ordinates because of their performance as employees. *Id,* at 1255. In analyzing the form and context of such statements, the court stated that because the statements were made by a supervisory employee to other employees and not as a citizen speaking out to the public, they were not matters of public concern. *Id.* (citing *Kurtz v. Vickrey,* 855 F.2d 723, 727 (11th Cir.1988)). The court reasoned that "the content, internal employee discipline, and the context, in-house communications between employees speaking as employees" convinced the court that the speech was not a matter of public concern. *Id.* Similarly, the court finds that the context, form, and content of the Plaintiff's comments as an in-house review concerning Defendant Mariano's performance were similarly internal matters which did not rise to the level of public concern.

■ The Plaintiff argues that he commented on the "health and vitality" of his department. However, the evidence presented to the court establishes that Defendant Alexander characterized a conversation he had with the Plaintiff as concerning the "health and vitality of the department." Alexander's Deposition, page 68. The only evidence provided to the court of the Plaintiff's comments during this conversation comes from Defendant Alexander's deposition in which he states that the Plaintiff's comments during this conversation were made in opposition to Defendant Mariano's appointment as dean. *Id.* pages 68–9. The Defendants point out that federal courts have held that comments in opposition to the appointment of persons to positions within a department which do not attempt to bring to light fraud or wrongdoing, but are personal grievances are not a matter of public concern. *See eg. Harris v. Merwin,* 901 F.Supp. 509

(N.D.N.Y.1995). In the instant case, the evidence establishes that the Plaintiff's comments were made in the context of what Defendant Alexander characterizes as the Plaintiff's attempts to "derail" the appointment of Defendant Mariano. Alexander Deposition at page 68. There is no evidence to indicate that the Plaintiff's alleged speech was anything more than a personal grievance with the appointment of Defendant Mariano. Therefore, the court concludes that based on the content, context, and form of these comments, the speech was not a matter of public concern.

■ The Plaintiff also has provided evidence that he criticized the method by which faculty members were elected to the Graduate Council. The Plaintiff felt that all graduate faculty should be allowed to vote for a representative on the Graduate Council. The Defendants have pointed out that the Tenth Circuit, in addressing similar comments concerning the availability of Graduate Council positions to tenured and non-tenured persons, held that such comments were not of public concern. *Bunger v. University of Oklahoma Board of Regents,* 95 F.3d 987 (10th Cir.1996). The court reasoned that the "organization of such internal governing bodies is not an issue of social importance or heightened public interest." *Id.* at 992. Similarly, this court finds that the Plaintiff's evidence of his comments on the election of members to the Graduate Council indicate that his speech concerned an internal management dispute and that the plaintiff was speaking as an employee, not a citizen.[8]

■ The Plaintiff also alleges that his comments on a policy for internal evaluation of tenure and promotion applications of the faculty were of public concern. The evidence

8. The court notes that the Plaintiff filed a grievance with regard to this issue and that the Plaintiff's recommendation was ultimately accepted. In the Complaint, the Plaintiff alleges that his right to petition the government for the redress of grievances has been violated by the Defendants. The Defendants have pointed out that to prevail on such a claim, the Plaintiff must show that the subject of the grievance was a public concern. *See Renfroe v. Kirkpatrick,* 722 F.2d

714 (11th Cir.1984). The Plaintiff apparently has not directly responded to the Defendants' arguments with respect to the right of petition. Because the Plaintiff has provided no evidence of any other grievances which might form the basis of this claim, and because the grievance about which evidence has been produced is not a matter of public concern, the court finds that the Defendants are entitled to summary judgment on the right to petition claim.

cited by the Plaintiff, Defendant Alexander's Deposition, reflects Defendant Alexander's opinion that the Plaintiff was insubordinate by not objecting to the proposed policy when it was before the Council of Deans, but waiting to voice opposition in front of the full faculty. Alexander Deposition, page 48. This evidence reflects that the Plaintiff spoke out against a procedure which was being considered which apparently would set guidelines for evaluating tenure and promotion applications. From the evidence that has been provided of the content, form, and context of this speech, therefore, the court concludes that the Plaintiff's speech was commentary on an internal procedure to be applied within TSUM, and involved no substantive issues that could influence the public's perception of the quality of education provided. *Compare Maples v. Martin,* 858 F.2d 1546, 1553 (11th Cir.1988)(plaintiff's speech was of public concern because although it was critical of the way the department was managed it "also involves substantive issues that could influence the public's perception of the quality of education").

■ The Plaintiff has also pointed to statements which he has characterized as "statements regarding Curry's alleged misrepresentation regarding university budgets." Plaintiff's Brief in Response to the Motion for Partial Summary Judgment, page 12. In support of his argument that this speech was constitutionally protected, the Plaintiff quoted Defendant Alexander's statement that he was "incensed" by the Plaintiff's speech. Plaintiff's Brief in Response to the Motion for Partial Summary Judgment, page 12. This evidence quoted by the Plaintiff might have some bearing on the question of a causal relationship between speech and an adverse employment action, but it does not establish that the Plaintiff spoke on a matter of public concern.

The court recognizes, however, that the Plaintiff was likely relying on the content of two pages of Defendant Alexander's deposition to which he cited, rather than just the portion that he quoted, since the Plaintiff

cited this evidence to show a parallel to the Second Circuit's decision in *Bernheim v. Litt,* 79 F.3d 318 (2nd Cir.1996). The court finds that *Bernheim* does not stand for the broad proposition for which the Plaintiff has cited it, however. Although the Plaintiff has cited *Bernheim* for the proposition that misrepresentations are a matter of public concern, the court in *Bernheim* stated that the statements "regarding the quality of education provided by the public school as measured by achievement test scores and their year-to-year improvement or deterioration on a schoolwide basis may reasonably be considered a matter of public concern." *Id.* at 325. It appears, therefore, that the court focused on the content of the plaintiff's speech, not merely the fact that it was speech about alleged misrepresentations. The speech was also made in the context of reports to various authorities. *Id.* at 324.

In addition, while the Plaintiff in this case has characterized his comments as being about misrepresentations made by Curry regarding school budgets, the Plaintiff's evidence with regard to his alleged speech regarding university budgets is that "Dr. Curry had presented some information about the budget and about where we were. And [the Plaintiff] questioned whether or not faculty had had input into the budget process ... essentially leading a charge that the faculty had no input in the budget process." Alexander Deposition, pages 29, 30. Consequently, the evidence cited by the Plaintiff does not support his characterization that he spoke out about misrepresentations regarding university budgets. Drawing all inferences in favor of the Plaintiff, the evidence provided by the Plaintiff establishes that the Plaintiff alleged that the faculty did not have input into the budget process. The content, form, and context of this speech indicates that the Plaintiff's comments over whether the faculty had input into the budget process was speech on an internal administrative matter and did not concern the public's perception of the quality of education.

■ The evidence provided to the court of comments which were made by the Plain-

tiff about the faculty evaluation process is also found in Defendant Alexander's deposition. According to Defendant Alexander, the Plaintiff voiced opposition to implementation of a faculty evaluation policy, stating that faculty evaluation should not be conducted in the setting of TSUM. Alexander Deposition page 47. The Plaintiff also stated that he wanted no part of an evaluation system. *Id.* The content of the Plaintiff's speech, his opposition to an evaluation system and statement that he would have no part of it, and the context of his statement, statements made to the person who proposed implementing the procedure, reflect that his speech is an "employee grievance concerning internal school policy." *Ferrara*, 781 F.2d at 1515. Because a personal grievance does not rise to the level of a public concern merely because the plaintiff claims that the public has an interest in the way public institutions are run, the court finds that the Plaintiff's evidence does not establish that he spoke on a matter of public concern. *Id.*[9]

Because the Plaintiff has failed to establish that he spoke on a matter of public concern, the Defendants are entitled to summary judgment on the Plaintiff's First Amendment claim.[10]

## V. CONCLUSION

The court concludes that because the Plaintiff has failed to demonstrate that there are disputed issues of fact with regard to his federal constitutional claims, the Defendants are entitled to judgment as a matter of law on the Plaintiff's claims under the United States Constitution. The Defendants are also entitled to summary judgment on the Plaintiff's claims asserted under the Alabama Constitution of 1901. Therefore, the Motion for Partial Summary Judgment is GRANTED, and it is hereby ORDERED that judgment is entered in favor of all Defendants and against the Plaintiff on Count I, Count II, and Count III of the Complaint, and in favor of the individual Defendants on Count IV of the Complaint.

The case will proceed to trial as against TSUM on Count IV of the Complaint.

---

**9.** Even if the court concluded that the Plaintiff spoke on a matter of public concern, the Plaintiff has not established that these instances of speech have been defined as matters of public concern under clearly established law. *See Williams v. Alabama State Univ.*, 102 F.3d 1179, 1183 (11th Cir.1997)(finding that the plaintiff had an interest in speaking on a matter, but that whether the speech was a matter of public concern was not clearly established). Furthermore, even if the speech is of public concern under clearly established law, the Defendants are entitled to qualified immunity unless *Pickering* balancing would lead to the inevitable conclusion that the discharge of the Plaintiff was unlawful. *Dartland v.*

*Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir.1989). Based on the evidence presented, the court cannot conclude that this case is an "extraordinary case" in which the *Pickering* balancing would lead to the inevitable conclusion that the Plaintiff was unlawfully discharged.

**10.** Because the Plaintiff has failed to establish a claim for a constitutional violation, the state officials are also entitled to summary judgment as to any claim the Plaintiff may have made for prospective injunctive relief as against the individual defendants in their official capacities.