PUBLISH

**UNITED STATES COURT OF APPEALS**

Filed 9/10/96

**TENTH CIRCUIT**

---

R.C. BUNGER, and K.V. PRADHAN,

    Plaintiffs - Appellants,

    v.

UNIVERSITY OF OKLAHOMA
BOARD OF REGENTS; CAMERON
UNIVERSITY; DON DAVIS,
President; JACQUETTA MCCLUNG,
Dean; TERRIL MCKELLIPS, Vice-
President for Academic Affairs;
WANDA STEVENS, Chairman,
Department of Administrative
Sciences, School of Business; BOB
SHEETS, Chairman, Department of
Accounting and Finance, School of
Business,

    Defendants - Appellees.

No. 95-6191

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D. Ct. No. Civ-92-915-L)**

---

Donald A. Herring (Joseph W. Strealy, with him on the brief), Schnetzler/Strealy,
Oklahoma City, Oklahoma, appearing for Appellants.

Harry F. Tepker, Jr., University of Oklahoma Law Center, Norman, Oklahoma
(Fred Gipson and Lisa Millington, University of Oklahoma, Office of Legal
Counsel, Norman, Oklahoma, with him on the brief), appearing for the Appellees.

Before ANDERSON, TACHA, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

Plaintiffs R.C. Bunger and K.V. Pradhan sued their former employer, Cameron University, the University of Oklahoma Board of Regents, and various administrators associated with Cameron University under 42 U.S.C. § 1983 for deprivation of their due process and free speech rights. The district court granted summary judgment in favor of the defendants on both claims, and Bunger and Pradhan now appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

Bunger and Pradhan were untenured assistant professors in tenure-track faculty positions in the Cameron University School of Business. In December 1990, the two professors, along with two other faculty members, signed a "Complaint Relating to Election Procedures for Graduate Council Membership from the School of Business." The complaint was a memorandum to Dean Jacquetta J. McClung of the School of Business and to the chairpersons of the two departments at the school, and criticized the dean's announced election procedures for becoming a member of the Cameron University Graduate Council.

The Graduate Council played a role in shaping admissions policies to graduate programs, graduate curriculum content, and qualifications for graduate degrees. The professors complained that the election procedures restricted Graduate Council membership to tenured faculty and that exclusion of untenured faculty from the Council violated the university's Faculty Handbook. Prior to the professors' complaint, Bunger had received six of nine votes cast as a write-in candidate for the Council. Accordingly, in addition to demanding that untenured faculty be eligible for Council membership, the complaint requested "that the election of R.C. Bunger be honored."

In April 1991, defendant Terril McKellips, Vice-President for Academic Affairs, officially notified Bunger and Pradhan that they had not been recommended for reappointment and that their current appointments would be terminated at the end of the 1991-1992 academic year. Both professors filed grievances with the Faculty Grievance Committee, complaining that the university failed to follow Faculty Handbook guidelines in making its reappointment decision. In particular, the professors complained that the university violated rules regarding the selection of a reviewing personnel committee, notification procedures, the scheduling of meetings, the development of evaluation plans, and the provision of an opportunity for the faculty member under scrutiny to address the personnel committee. The committee recommended that both professors be

reappointed because the university had failed to follow its procedural guidelines in evaluating their performance. However, the university declined to follow the committee's recommendations and refused to reappoint Bunger and Pradhan for the 1992-1993 academic year.

In May 1992, the plaintiffs initiated this action against Cameron University, the Board of Regents, and various individual defendants. They allege that the defendants deprived them of procedural due process by failing to reappoint them to the faculty of Cameron University in violation of procedures contained in the university's Faculty Handbook. In addition, the plaintiffs alleged that the defendants violated their First Amendment right to free speech by declining to reappoint them, in retaliation for their participation in the grievance regarding the composition of the university's Graduate Council. In April 1995, the district court entered an order granting summary judgment to the defendants and dismissing all claims against the defendants.

## II. The Due Process Claims

We review a district court's grant of summary judgment de novo, applying the same legal standard employed by the district court. Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995). Bunger and Pradhan first contend that the university's decision not to reappoint them constitutes a deprivation of

their procedural due process. The requirements of procedural due process apply only where a person is deprived of "life, liberty or property." U.S. Const. amend. XIV, § 1; see Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). In this case, the plaintiffs assert that they possess a constitutionally-protected property interest in their reappointment as untenured faculty members. The property interests safeguarded by due process are not created by the Constitution, Roth, 408 U.S. at 577, nor limited to "actual ownership of real estate, chattels, or money." id. at 571-72. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Id. at 577.

Under Oklahoma state law, public employees are employed at will unless they have specific contractual arrangements entitling them to continued employment, such as tenure agreements. See Carnes v. Parker, 922 F.2d 1506, 1510 (10th Cir. 1991). Tenured professors in Oklahoma possess a property interest in their continued employment that is protected by the Due Process Clause. Short v. Kiamichi Area Vocational-Technical Sch. Dist. No. 7, 761 P.2d 472, 475-76 (Okla. 1988). However, untenured professors in Oklahoma do not possess this "legitimate claim of entitlement" to their reappointment absent a specific contractual guarantee to that effect. See Roth, 408 U.S. at 2709. Consequently, Bunger and Pradhan can assert no constitutionally-cognizable

property interest in their reappointment.

Bunger and Pradhan also contend that the procedural guidelines in the Faculty Handbook effectively created a property interest in reappointment, of which they could be divested only according to the terms of the specified procedures. This tautological argument fails because it attempts to construct a property interest out of procedural timber, an undertaking which the Supreme Court warned against in <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532 (1985). "The categories of substance and procedure are distinct. . . . 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." <u>Id.</u> at 541. The university's promise that it would follow certain procedural steps in considering the professors' reappointment did not beget a property interest in reappointment. See <u>Colburn v. Trustees of Indiana Univ.</u>, 973 F.2d 581, 589-90 (7th Cir. 1992) (holding that statements in handbooks and appointment contracts that untenured university faculty would be judged according to certain criteria and procedures did not create a property interest in reappointment). Only a formal guarantee of continuing employment under color of state law--of which academic tenure is a classic example--would have created a property interest. In sum, because Bunger and Pradhan do not possess a property interest in their reappointment, they may not avail themselves of the constitutional protections of the Due Process Clause.

The plaintiffs in this case also assert that the defendants deprived them of a constitutionally-cognizable liberty interest by refusing to reappointment them. Bunger alleges that another university withdrew an offer of employment after it learned of his pending litigation with Cameron University. Bunger and Pradhan therefore argue that Cameron University's decision to not reappoint them restricted their liberty to take advantage of other employment opportunities, in violation of the requirements of due process. Although the liberty guaranteed by the Fourteenth Amendment extends beyond freedom from bodily restraint, Roth, 408 U.S. at 572, it does not extend as far as the plaintiffs in this case contend. "Mere proof . . . that [the plaintiff's] record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" Id. at 574, n.13. Here, as in Roth, "[t]he State, in declining to rehire [the plaintiff], did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality." Id. at 573. Nor does the record contain evidence that the state took measures to bar the plaintiffs from obtaining employment at other universities. Although any dismissal or denial of reappointment, for whatever reason, may reflect negatively upon a professor, this stigma alone is not

of a constitutional magnitude. Haimowitz v. University of Nevada, 579 F.2d 526, 529 (9th Cir. 1978). Thus, the decision not to reappoint Bunger and Pradhan does not amount to a constitutionally-cognizable deprivation of their liberty to pursue their chosen career.

### III. The Free Speech Claim

Bunger and Pradhan claim that their participation in the complaint regarding the exclusion of untenured faculty from the Cameron University Graduate Council precipitated the university's decisions not to reappoint them. They assert that the university's decisions were in retaliation for their expressed opposition to university policies and that the university thereby violated their First Amendment rights to free speech. A public employee may not invoke the protection of the First Amendment for every statement that he makes while on the state payroll. Instead, constitutional protection extends only to speech on matters of "public concern," Connick v. Meyers, 461 U.S. 138, 143-43 (1983), which are issues of "political, social, or other concern to the community." Id. at 146. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48. We review the question whether speech by a public employee involves a matter of public concern de novo. See Wren v. Spurlock, 798 F.2d 1313, 1317 (10th Cir. 1986).

The decisions of the Supreme Court provide several examples of subjects that are

matters of public concern: public criticism of a board of education regarding the allocation of funds between athletics and education, Pickering v. Board of Educ., 391 U.S. 563, 571-72 (1968); testimony before a state legislature on whether a college should be elevated to four-year status, Perry v. Sindermann, 408 U.S. 593, 594-95, 598 (1972); disclosure to a radio station of the substance of a school principal's memorandum concerning teacher dress codes in the context of a campaign to raise public support for bond issues, Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 282-84 (1977); and private communications with an employer regarding racially discriminatory policies, Connick, 461 U.S. at 146 (citing Givhan v. Western Line Consolidated Sch. Dist., 439 U.S. 410 (1979)). In contrast, the distribution of a questionnaire within a district attorney's office regarding office transfer policies, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressure to work in political campaigns does not amount to expression on matters of public concern. Connick, 461 U.S. at 141-43.

Bunger and Pradhan's grievance does not involve a matter of public concern. The question of whether an administrative council in a university is limited to tenured faculty or opened to untenured faculty is a matter of internal structure and governance. The organization of such internal governing bodies is not an issue of social importance or heightened public interest. Although many

an academic donnybrook has been fought over such administrative rules, the issues at stake rarely transcend the internal workings of the university to affect the political or social life of the community.

The First Amendment does not require public universities to subject internal structural arrangements and administrative procedures to public scrutiny and debate. The definition of what constitutes a matter of public concern must be constrained by "the common-sense realization that government offices could not function if every employment decision became a constitutional matter." Id. at 143. The grievance brought by Bunger and Pradhan is internal in scope and personal in nature, in that it calls specifically for the membership of Bunger on the Graduate Council. It does not "directly affect the community at large," Colburn, 973 F.2d at 586, and consequently is not a matter of public concern.

In conclusion, we hold that the expression of Bunger and Pradhan does not regard a matter of public concern, and thus their nonreappointment is not subject to First Amendment scrutiny. In addition, they possessed no Fourteenth Amendment property or liberty interest in their reappointment and thus their due process claims must also be rejected. Accordingly, the judgment of the district court is AFFIRMED.