**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 22 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CATHERINE CLINGER,

      Plaintiff - Appellant,

v.

NEW MEXICO HIGHLANDS
UNIVERSITY, BOARD OF
REGENTS; SELIMO RAEL;
THOMAS KEESING; DAVID
ARCHULETA, in their official and
individual capacities, and LEROY
SANCHEZ,

      Defendants - Appellees.

No. 99-2017

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CIV-97-548-LH)**

---

J. Douglas Foster (Kathryn D. Lucero, with him on the briefs), Foster, Johnson, Harris & McDonald, Albuquerque, New Mexico, appearing for Plaintiff-Appellant.

Timothy L. White, Atwood, Malone, Turner & Sabin, P.A., Albuquerque, New Mexico, appearing for Defendants-Appellees.

---

Before **TACHA**, **MCWILLIAMS**, and **MAGILL**,[*] Circuit Judges.

_____

**TACHA**, Circuit Judge.

_____

Plaintiff Catherine Clinger appeals the district court's grant of summary judgment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I.**

In 1992, the New Mexico Highlands University ("University") hired plaintiff to serve as an Assistant Professor of Art. As a contractual employee with probationary status, plaintiff was subject to the University's tenure policy. In October 1996, plaintiff applied for tenure and, on December 9, 1996, the Board of Regents denied her application.

In May 1997, plaintiff filed an amended complaint seeking damages and injunctive relief. She named as defendants the Board of Regents; Selimo Rael, the University's president; and Thomas Keesing, David Archuleta and Leroy Sanchez, all present or former members of the Board of Regents. Pursuant to 42 U.S.C. § 1983, plaintiff alleged that defendants, in denying her tenure, retaliated against her for exercising her First Amendment right to free speech and violated her substantive due process guarantees. Plaintiff also claimed that defendants

_____

[*]The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Plaintiff further alleged that defendants breached her employment contract in violation of New Mexico common law.

In a bench ruling, the district court granted defendants' motion for summary judgment on the First Amendment, substantive due process and sex discrimination claims. The court dismissed without prejudice the state claim of contract breach.[1] Plaintiff filed a timely appeal.

## II.

We review the district court's grant of summary judgment de novo, applying the same legal standard as the court below. Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. Bullington, 186 F.3d at 1313.

---

[1] Plaintiff has abandoned her state claim on this appeal.

As the moving parties, defendants shoulder the "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995) (internal quotation marks and citation omitted). If defendants meet this burden, it falls to plaintiff to "identify specific facts that show the existence of a genuine issue of material fact." Id. "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (internal quotation marks and citation omitted).

## A.

"It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383 (1987). Thus, even as a probationary employee, plaintiff "may nonetheless be entitled to reinstatement if she was discharged for exercising her constitutional right to freedom of expression." Id. at 383-84.

We review plaintiff's First Amendment retaliation claim under the four-step test derived from Pickering v. Board of Education, 391 U.S. 563 (1968), and Connick v. Myers, 461 U.S. 138 (1983). Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir. 1998). First, we "must determine whether the employee's speech can be 'fairly characterized as constituting speech on a matter of public

concern.'" Gardetto v. Mason, 100 F.3d 803, 811 (10th Cir. 1996) (quoting

Connick, 461 U.S. at 146). If it can, we must then "balance the employee's

interest, as a citizen, in commenting upon matters of public concern against 'the

interest of the State, as an employer, in promoting the efficiency of the public

service[s] it performs through its employees.'" Id. (quoting Pickering, 391 U.S.

at 568). These first two questions are legal in nature and must be resolved by the

court. Id.

If the balance tips in favor of the employee, the employee next must "prove

that the protected speech was a substantial factor or a motivating factor in the

detrimental employment decision." Id. If the employee makes this showing, then

the burden shifts to the employer to show that it would have made the same

employment decision in the absence of the protected speech. Id. These final

questions concern causation and are properly resolved by the factfinder. Id.

Plaintiff points to four instances of speech between 1994 and 1996 in

support of her retaliation claim: (1) advocacy before the Faculty Senate of a "no

confidence" vote with respect to four members of the Board of Regents in light of

their purported failure to comply with an internal policy on the appointment of a

new president, (2) comments before the Faculty Senate criticizing Regent Keesing

in particular as untrustworthy based on the presidential appointment process, (3)

criticism of Selimo Rael for accepting the position of University President, and

(4) criticism of a proposed academic reorganization purportedly in conflict with the Faculty Handbook and the Board of Regents policy manual.

The district court found that plaintiff's speech did not touch on matters of sufficient public concern to merit constitutional protection. We agree. "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Id. at 812 (quoting Connick, 461 U.S. at 146). "Speech concerning individual personnel disputes or internal policies will typically not involve public concern." Curtis v. Oklahoma City Pub. Sch. Bd. of Educ., 147 F.3d 1200, 1212 (10th Cir. 1998). "On the other hand, speech that seeks to expose improper operations of the government or questions the integrity of government officials clearly concerns vital public interests." Id. (internal quotation marks and citation omitted).

In the first three instances, plaintiff publicly criticized the University president and the Board of Trustees. In the fourth instance, she spoke out generally in opposition to a proposed academic reorganization. She claims that this conduct implicates the public interest under our holding in Gardetto v. Mason, 100 F.3d 803 (10th Cir. 1996). In Gardetto, we held, inter alia, that the plaintiff's efforts to obtain a vote of "no confidence" against a college president and her public criticism of the president's reduction-in-force (RIF) plan involved matters of public concern. 100 F.3d at 813-14. In particular, we found that the

plaintiff's call for the "no confidence" vote "implicated broader concerns about [the president's] possible misrepresentation of his educational status, his lack of integrity and leadership, and the corresponding decline in student enrollment" at the college. Id. at 813. We also concluded that the plaintiff's opposition to the RIF touched a matter of public concern because "[t]he speech of persons able to offer a well-informed perspective on expenditures of public funds may be especially valuable to public debate on such subjects." Id. at 814.

We find the instant case distinguishable from Gardetto. The plaintiff in Gardetto publicly challenged the integrity, qualifications and alleged misrepresentations of a public official. In this case, plaintiff simply differed with the Board of Trustees on the internal process they followed in selecting a president and reorganizing the University. Unlike the plaintiff in Gardetto, plaintiff here did not challenge the actual credentials or qualifications of the president; she merely faulted him for taking part in an allegedly unsatisfactory process. While plaintiff publicly charged Regent Keesing as untrustworthy, she did so based on his participation in the same internal process. In essence, plaintiff has challenged the "internal structure and governance" of the University, and matters of this nature "rarely transcend the internal workings of the university to affect the political or social life of the community." Bunger v. University of Okla. Bd. of Regents, 95 F.3d 987, 992 (10th Cir. 1996). "The First Amendment

does not require public universities to subject internal structural arrangements and administrative procedures to public scrutiny and debate." Id.

Furthermore, in Gardetto, we stressed that criticism of a proposed RIF implicated the public interest because "speech about the use of public funds touches upon a matter of public concern." 100 F.3d at 813 (internal quotation marks and citation omitted). Reviewing the record before the district court, we find that plaintiff here has not made a credible showing that she spoke out in the interest of conserving the public fisc or on any other matter that transcended the internal policies of the university.

Having concluded that none of the proffered speech involves matters of public concern, we need not, at this stage, evaluate plaintiff's extended arguments concerning her qualifications for tenure. "[W]here an employee's speech cannot be characterized as speech on a matter of public concern, it is unnecessary for the court to examine the reasons for her discharge, demotion, or suspension." Id. at 812.

B.

Plaintiff next contends that defendants violated her substantive due process rights when they denied her tenure. "In order to present a claim of denial of substantive due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process

- 8 -

can attach." Curtis, 147 F.3d at 1215 (internal quotation marks and citation omitted). Plaintiff contends that she had an implied contract with the University that created a property interest entitling her to tenure. She claims that the denial of tenure was arbitrary and capricious and thus violated her substantive Fourteenth Amendment rights in that property.

As we recently noted, "our circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process." Hennigh v. City of Shawnee, 155 F.3d 1249, 1257 (10th Cir. 1998). In general, we look to state law to determine whether a property interest in employment exists. Lighton v. University of Utah, 209 F.3d 1213, 1221 (10th Cir. 2000). Plaintiff's asserted property interest as a non-tenured professor is dubious under New Mexico law. Cf. Jacobs v. Meister, 775 P.2d 254, 259-261 (N.M. Ct. App. 1989) (questioning whether a nontenured university professor is entitled to procedural due process protections). See also Bunger, 95 F.3d at 990 ("Tenured professors in Oklahoma possess a property interest in their continued employment that is protected by the Due Process Clause. However, untenured professors in Oklahoma do not possess this legitimate claim of entitlement to their reappointment absent a specific contractual guarantee to that effect.") (internal quotation marks and citations omitted).

However, even assuming plaintiff had a property interest in continued employment with the University, there is no evidence in the record that the deprivation of that interest was either arbitrary or capricious. In her position as an assistant professor of art, plaintiff was required to obtain a Master of Fine Arts (M.F.A.) or demonstrate equivalent experience and a professional record in printmaking. The evidence in the record indicates that she was aware of this degree requirement and that she was expected to complete her M.F.A. before promotion or award of tenure. At the time of the tenure decision, plaintiff had not obtained her M.F.A., and defendants expressly based the denial of tenure on her failure to earn the required degree. While plaintiff contends that she had demonstrated the requisite equivalent experience and was thus not required to obtain her terminal degree, the Regents obviously disagreed. We therefore find the Regents' tenure decision concerning plaintiff neither arbitrary nor capricious. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." Curtis, 147 F.3d at 1215 (internal quotation marks and citation omitted).

## C.

Finally, plaintiff claims that defendants discriminated against her on the basis of gender, in violation of both Title VII and Title IX. The district court found that plaintiff failed to produce any direct or circumstantial evidence that

defendants acted with a discriminatory motive.  We agree.  Even assuming plaintiff satisfied her Title VII prima facie case, defendants have come forward with a legitimate, nondiscriminatory reason for their tenure decision, namely, her failure to obtain an M.F.A. or demonstrate equivalent experience.  Plaintiff has not presented sufficient evidence to create a genuine dispute of material fact as to whether the defendants' proffered reason is pretext for sexual discrimination.  See Bullington, 186 F.3d at 1316.

Because the district court correctly dismissed plaintiff's Title VII claim, we need not independently consider her Title IX claim.  See Mabry v. State Bd. of Community Colleges and Occupational Educ., 813 F.2d 311, 316 (10th Cir. 1987) ("Both Title VII and Title IX prohibit discrimination on the basis of sex. . . . We find no persuasive reason not to apply Title VII's substantive standards regarding sex discrimination to Title IX suits.").

For the foregoing reasons, we **AFFIRM**.