**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

L. SUE MELLA,

        Plaintiff - Appellant,

    v.

MAPLETON PUBLIC SCHOOLS,
Adams County School District #1,
CHARLOTTE SCARPELLA, in her
individual capacity; SAM MOLINARO,
in his individual capacity,

        Defendants - Appellees.

No. 04-1377
(D. Ct. No. 03-CS-1408 (MJW))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **EBEL**, and **McCONNELL**, Circuit Judges.

Plaintiff-Appellant L. Sue Mella initiated this suit after she was not selected to fill the position of Manager of Technology for Mapleton Public Schools, Adams County School District No. 1 ("District"). Ms. Mella claims that this decision, made by Superintendent Charlotte Scarpella and Assistant Superintendent Sam Molinaro,

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

constitutes retaliation under the First Amendment.  She further argues that the District's failure to promote her constitutes discrimination on the basis of her age in violation of 29 U.S.C. § 623(a).  The District Court entered summary judgment against Ms. Mella on both claims.  We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I.  BACKGROUND

Ms. Mella became employed by the District as a computer specialist in approximately 1984.  In this position she worked with computer paraprofessionals in each school, set up software, and helped teachers integrate computers into the classroom.  She also implemented a $3.16 million expansion of the District's technology program, which included the networking of over one thousand computers, created the District's first web server and Internet Service Provider, and designed the District's first web homepage.  Ms. Mella holds an undergraduate degree in the natural sciences and has taken several post-graduate courses relating to technology, but she does not have a master's or other advanced degree.

In late 2000, the District began testing a security software program called Fortres, which prevents computer users from changing settings on their computers and from installing software without the involvement of a central administrator.  The following year, the District installed Fortres district-wide.  Shortly thereafter, teachers began complaining that Fortres prevented them from accessing information necessary for their teaching.  Ms. Scarpella held a meeting with Ms. Mella and others in the District to

discuss the problem.

During this meeting, Ms. Mella voiced her opinion that Fortres should not be disabled and explained that she was concerned with the possible consequences of removing the screening software. Specifically, Ms. Mella worried that without Fortres, teachers might load personal software onto their school computers in violation of copyright and licensing laws. She also worried that teachers might load programs that could interfere with existing programs on the computer. Both possible consequences would create additional work for the technology department. Ms. Scarpella dismissed Ms. Mella's concerns, reasoning that because the District entrusted teachers with the lives and well-being of their students every day, they could be trusted not to load inappropriate material on District computers. Ms. Scarpella instructed Ms. Mella to remove Fortres from District computers.

After the meeting, Ms. Mella sent a memo to her staff directing them to disable Fortres. In the memo, Ms. Mella emphasized that the decision to remove Fortres was made by Ms. Scarpella and not Ms. Mella. She instructed her staff to keep records of all problems related to the removal of Fortres, and she would then present the information to Ms. Scarpella. Finally, Ms. Mella noted that she was "concerned about the liabilities related to copyright infringement" and any questions or concerns should be related not to Ms. Mella but to her supervisor and the District's Chief Financial Officer, Don Herman. Ms. Scarpella and Mr. Herman were copied on the memo.

The day after Ms. Mella circulated this memo, Mr. Herman responded to Ms. Mella with a memo of his own, which was later placed in Ms. Mella's personnel file. Mr. Herman noted that he was not pleased with the way Ms. Mella handled the District's decision to disable Fortres, explaining that it was inappropriate "[t]o send a memo to her staff, essentially saying 'they're making me disable Fortres—call *them* if you have problems!'" He expected Ms. Mella to be a team player and support the District's decision, even if she didn't agree with it. Ms. Mella, however, continued to voice her complaints and sent yet another memo to Mr. Herman and Ms. Scarpella the following week. This time, the memo contained a several-page-long attachment titled "Concerns related to the Removal of Fortres."

A month or so later, Ms. Scarpella anticipated imposing additional demands on the District's technology department and felt that the department needed more expertise. As a result, she began reorganizing the department[1] and created the position of Manager of Technology. The District received 180 applications for the position, including one from Ms. Mella. Out of that group, Ms. Mella was one of ten applicants selected for an interview.

Mr. Molinaro was responsible for the interview process and compiled an interview panel consisting of Brady Mills, the Director of Technology at a different school district;

---

[1]Prior to the reorganization of the technology department, Ms. Scarpella had also reorganized certain administrative positions within the District, as well as the maintenance and custodial departments.

Tina Kerschen, the Executive Director of Curriculum and Instruction; Don Hergenreter, a teacher; Paul Frank, a principal; and Eldon Wire, an assistant principal. The panel was given a list of questions to ask the candidates, what to look for in a response, and suggested each panel member grade the responses on a scale of one to three.[2] Because all of the candidates selected for an interview had the requisite technological skills, the questions focused on managerial, communication, and prioritization skills. Based on the interviews, the panel was to select the top two candidates, who would then be interviewed by Ms. Scarpella and others.

After completing the ten interviews, the panel members discussed the candidates. They concluded that other candidates communicated better and with a higher energy level than Ms. Mella, demonstrated better interpersonal and leadership skills, and had a client-

---

[2]Each question contained a subject heading, a specific question to ask the candidate, and responses that the panel should look for. For example, the third question read:

3. Leadership/Management

How do you keep multiple projects on schedule and on budget?

Look fors:
- Ability to forecast and plan for resource needs
- Ability to link needs with budget
- Knowledge of budget procedures
- Ability to manage and monitor multiple tasks for time line and cost factors
- Ability to create project plans with milestones
- Use of project lifecycle management principles
- Frequent team meeting and communications

centered orientation. The panel decided that Damon Brown and Matthew Griffin should be recommended as the top two finalists, followed by Bruce Carmen and Ms. Mella. No panel member thought Ms. Mella should be recommended for the position. Ms. Scarpella, Mr. Molinaro, and another administrator interviewed Mr. Brown and Mr. Griffin. Ms. Scarpella then recommended that the Board of Education hire Mr. Brown, which it did on February 4, 2002.

Ms. Mella took a leave of absence in January 2002, shortly after learning that she had not been selected for the position. While she was on leave, Mr. Molinaro offered Ms. Mella another position in the reorganized technology department, which Ms. Mella declined due to salary reasons and on the recommendation of her psychologist. Ms. Mella returned to the District in August as a middle school teacher.

The following September, Ms. Mella filed this lawsuit alleging that: (1) the District retaliated against her in violation of the First Amendment; (2) Ms. Scarpella and Mr. Molinaro retaliated against her in violation of the First Amendment; (3) the District discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"); (4) the District discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and (5) the District discriminated against her on the basis of her sex in violation of Title IX, 20 U.S.C. § 1681 et seq. Ms. Mella subsequently withdrew three of those claims, leaving only her First Amendment claim against Ms.

Scarpella and Mr. Molinaro and her claim under the ADEA against the District. After discovery, the District Court granted summary judgment against Ms. Mella on both claims, which she now timely appeals.

## II. DISCUSSION

A.    <u>Standard of Review</u>

We review the District Court's entry of summary judgment de novo. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Byers*, 150 F.3d at 1274.

B.    <u>First Amendment Retaliation</u>

Ms. Mella first argues that she was not selected for the position of Manager of Technology because she spoke out about the potential ramifications of disabling Fortres—namely, that teachers might download software in violation of copyright and trademark law. Ms. Mella maintains this constitutes retaliation for engaging in protected speech and therefore is unconstitutional under the First Amendment.

In evaluating a public employee's First Amendment retaliation claim we have stated that:

The Court must first determine whether the employee's speech touches on a matter of public concern. If it does, the Court must balance the employee's interest, as a citizen, in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

If the first two prerequisites are met, the speech is protected and the plaintiff must show that her speech was a substantial or motivating factor behind the adverse employment decision. If the plaintiff satisfies all these factors then the burden shifts to the employer to show, by a preponderance of the evidence, that it would have acted in the same way toward the employee in the absence of the protected speech.

*McFall v. Bednar*, 407 F.3d 1081, 1088 (10th Cir. 2005) (quotations and citations omitted). We begin by considering whether Ms. Mella spoke out on a matter of public concern, which is a question of law. *Baca v. Sklar*, 398 F.3d 1210, 1219 (10th Cir. 2005).

Matters of public concern include issues of "political, social or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Speech is more likely to be considered concerning the public when it "focuses on disclosing public officials' malfeasance or wrongdoing." *Schalk v. Gallemore*, 906 F.2d 491, 495 (10th Cir. 1990); *see also Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import.") (citations omitted). On the other hand, speech concerning individual personnel disputes or internal policies generally will not be held to be on a matter of public concern. *McFall*, 407 F.3d at 1089. In resolving the question we look to the content, form, and context of the statements and consider the speaker's motivation in making such statements. *Baca*, 398 F.3d at 1219.

With these principles in mind, we have noted that:

> [t]he decisions of the Supreme Court provide several examples of subjects that are matters of public concern: public criticism of a board of education regarding the allocation of funds between athletics and education; testimony before a state legislature on whether a college should be elevated to four-year status; disclosure to a radio station of the substance of a school principal's memorandum concerning teacher dress codes in the context of a campaign to raise public support for bond issues; and private communications with an employer regarding racially discriminatory policies. In contrast, the distribution of a questionnaire within a district attorney's office regarding office transfer policies, office morale, the need for a grievance committee, [and] the level of confidence in supervisors . . . does not amount to expression on matters of public concern.

*Bunger v. Univ. of Okla. Bd. of Regents*, 95 F.3d 987, 992 (10th Cir. 1996) (citations omitted).

In this case, we hold that Ms. Mella's speech during the meeting with Ms. Scarpella and Ms. Mella's memo to her staff did not touch on a matter of public concern and thereby are not entitled to First Amendment protection. The Fortres software is merely one of several ways to prevent teachers from installing inappropriate material on their computers. Its removal is not unlawful. There is no indication that Ms. Scarpella decided to disable Fortres to make it easier for teachers to break federal copyright law. And there is no evidence that teachers in fact are violating copyright law, previously did, or are more likely to in the future, without Fortres.[3] As such, Ms. Mella's speech cannot

---

[3]Of course, security software such as Fortres makes it more difficult to install programs on a computer in violation of copyright laws but this does not mean that simply because violating copyright law is now easier to do, people are suddenly inclined to do it.

- 9 -

fairly be characterized as an attempt to "disclose[] . . . evidence of corruption, impropriety, or other malfeasance." *See Conaway*, 853 F.2d at 796. In addition, by Ms. Mella's own account, her intent was not to voice her concerns about copyright infringement to the public. She voiced her concerns because she "didn't want to be held accountable" if problems arose after the removal of Fortres and because she wanted "[t]o get it in writing that [she] was not the one who had ordered it disabled."

Based on the foregoing, we agree with the District Court that the evidence clearly shows that Ms. Mella merely disagreed with an internal policy decision about how to limit computer usage and did not want to be held responsible for that decision. Accordingly, Ms. Mella did not speak out as a citizen on a matter of public concern. In so holding, we are reminded that "[t]he definition of what constitutes a matter of public concern must be constrained by "the common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick*, 461 U.S. at 143. There is nothing in this record which counsels against such common-sense restraint. The District Court did not err in granting summary judgment for Ms. Scarpella and Mr. Molinaro on this claim.

C.    Discrimination Under the ADEA

Ms. Mella next argues that the District did not hire her to be the Manager of Technology because of her age. To make out a prima facie claim of discrimination, Ms. Mella must show that (1) she was within the protected age group, (2) she was qualified

- 10 -

for the position; (3) she was not selected for the position; and (4) the position remained open or a younger candidate was selected for the position. *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995). The District Court assumed without deciding, as do we, that Ms. Mella has met her burden to establish a prima facie case.

Once a plaintiff has met her burden under this step, the defendant must come forth with a legitimate, nondiscriminatory reason for not selecting her for the position. *Sanchez. v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998). In this case, the District claimed it did not hire Ms. Mella because she was not selected as one of the two finalists by the interview team that found others who communicated better and with a higher energy level than Ms. Mella, demonstrated better interpersonal and leadership skills, and had more client-centered orientations. This satisfies the District's burden to provide a facially nondiscriminatory reason for its action. As a result, the burden shifts once more to Ms. Mella, who must show that this reason is pretextual. *Id.*

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price*

*River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Ms. Mella first contends that the age of the interviewees who the panel ranked higher than her is relevant to pretext. She maintains that the top three candidates were among the youngest to be interviewed. This, she argues, indicates that the District failed to hire her not because of her lower rank by the panel, but rather because of her age. Ms. Mella's claim, however, is unsupported by the record.

After the panel's caucus, it determined that the top four candidates, in descending order, were Mr. Brown, Mr. Griffin, Mr. Carmen, and Ms. Mella. Mr. Brown was born in 1970, Mr. Carmen in 1959, and Ms. Mella in 1949. Mr. Griffin's age is unclear; he could be either older or younger than Ms. Mella.[4] Contrary to Ms. Mella's assertions, the record reflects that Mr. Carmen was not one of the youngest interviewees; at least four of the interviewees were younger. Further, because Mr. Griffin's age is a matter of pure speculation at this point,[5] a reasonable jury simply could not conclude that Mr. Griffin

---

[4]Ms. Mella produced six of the nine other candidates' motor vehicle records—which contain a date of birth—to demonstrate the ages of those candidates. Ms. Mella discovered the age of another candidate in a deposition. With respect to the remaining two candidates, Ms. Mella only produced their resumes—which indicate the year each received his undergraduate degree—as evidence of their ages. For Mr. Griffin, Ms. Mella states that "[a]ssuming [Mr. Griffin] graduated from college at age 21, Griffin was born in 1971." For Mr. Lang, Ms. Mella similarly argues that "[a]ssuming he graduated at age 22 from college, he was born in 1969." Of course, Ms. Mella is entitled to all reasonable inferences in her favor. Those inferences, however, "must be more than speculation and conjecture." *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987).

[5]*See supra* note 4.

was one of the youngest candidates. And, while the record does reveal that Mr. Brown was among the youngest interviewees, this fact alone[6] does not call into question the District's stated reason for not promoting Ms. Mella—namely, that she did not communicate as effectively as Mr. Brown.

Next, Ms. Mella argues that several other facts suggest subjectivity or improper conduct in the selection process and therefore indicate that the District's reason for not hiring her is pretextual. First, she maintains that the members of the interview panel were not told to look for specific characteristics or backgrounds among the interviewees; as such, the panel may have considered age as a factor in the selection process. Ms. Mella also relies heavily on the undisputed facts that not all of the evaluation forms used by the interview panel were retained by the District, nor did the panel document the caucus during which the panel members conferred and selected the top two candidates. According to Ms. Mella, the absence of these records makes it impossible to tell whether the selection process was being followed, and therefore summary judgment was improper.

It is well-established that subjectivity in making employment decisions may be evidence of pretext. *Jones v. Barnhart*, 349 F.3d 1260, 1267–68 (10th Cir. 2003). In this

---

[6]Of course, other evidence—in conjunction with the fact that Mr. Brown was among the youngest interviewees—could raise a factual dispute as to whether the District's justification is pretextual. Because we conclude below, however, that no other evidence in the record supports a finding of pretext, we are left only with Mr. Brown's relative youth to determine this issue—a fact which does not, in and of itself, demonstrate pretext.

case, however, the District found that all the candidates' technological skills made them equally objectively qualified.[7] It had a legitimate reason, then, to justify the use of certain subjective criteria in hiring a departmental manager. *See Simms v. Okla. ex rel. Dep't Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) ("When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria." (quotation omitted)). Ms. Mella does not argue that communication, leadership, and interpersonal skills are illegitimate bases for deciding between candidates with equal technological skills. Nor does she argue that she has better communication, leadership, or interpersonal skills than the two who were selected as finalists and recommended to Ms. Scarpella. As a result, the use of these subjective considerations in this case does not support an inference of discrimination.

Moreover, all five panel members were deposed, and all five testified that they did not consider age as a factor in the process. The fact that some evaluation sheets are unavailable and that the District did not audio- or video-record the panel's meeting is not evidence that the District's reason for not selecting Ms. Mella is pretextual. In this case,

---

[7]To the extent Ms. Mella argues that, in her view, she is more qualified than the other candidates, such an assertion does not create a material factual dispute. *Simms v. Okla. ex rel. Dep't Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999).

there is uncontested, sworn testimony that Ms. Mella was not chosen for the position of Director of Technology because the panel members believed two other candidates were better suited for the job. Ms. Mella's unsubstantiated claims to the contrary do not demonstrate pretext. *See Branson*, 853 F.2d at 772.

Finally, Ms. Mella points to three age-related comments as further evidence of pretext. First, Ms. Mella argues that Mr. Mills heard a person in the District state that the District was looking for a Manager of Technology who would be around "for years to come." The record, however, does not support this factual allegation.

Second, during a meeting with all District staff two months after Mr. Brown was hired, Ms. Scarpella made a speech with the following statement:

> There's knowledge and experience behind the energetic faces; maybe more experience still lies behind some that aren't so fresh and energetic. Look some more. You'll notice a few folks, familiar faces most of them, who look particularly energetic in spite of the miles they've put in. These are, no doubt, the "soon-to-be retired!" Your experience, know-how and enthusiasm will prove irreplaceable.

When read in context, it is clear this statement is part of a speech intending to recognize the service of employees who were retiring. Thus, we conclude that no reasonable jury could construe this comment as ageist.

Third, when Ms. Scarpella announced the District's decision to hire Mr. Brown, she stated that Mr. Brown was a bright young man with a young family. While repeated references to Mr. Brown and his family as "young" certainly implicate his age, there is simply no connection between this statement and either the panel's decision to

recommend Mr. Brown or Ms. Scarpella's decision to hire him. Ms. Scarpella was not a panel member; she did not choose the panel members; her comments were made months after the panel made it choice; and there is no evidence that Ms. Scarpella's views affected the panel's decision. As a result, this remark in no way relates to the panel's decision not to recommend Ms. Mella or to Ms. Scarpella's decision to hire Mr. Brown, and is therefore insufficient to create a jury issue. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530–31 (10th Cir. 1994) (requiring a nexus between discriminatory comments and employer's allegedly discriminatory employment decision). Therefore, neither this comment nor the other two comments referencing age are sufficient to show that the District's purported reason for not hiring Ms. Mella is pretextual.

## III. CONCLUSION

Because Ms. Mella's speech was not on a matter of public concern and because she has failed to put forth evidence that the District's reason for not promoting her was pretextual, we AFFIRM the District Court's entry of summary judgment against her First Amendment retaliation and ADEA claims.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

- 16 -