**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 16, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

STEVEN J. MARANVILLE,

    Plaintiff - Appellant,

v.

UTAH VALLEY UNIVERSITY; SCOTT
HAMMOND, Ph.D.; IAN WILSON,
Ph.D.; ELIZABETH HITCH;
MOHAMMAD EL-SAIDI; JOHN AND
JANE DOES, 1-10,

    Defendants - Appellees.

No. 13-4129
(D.C. No. 2:11-CV-00958-DB)
(D. Utah)

## ORDER AND JUDGMENT[*]

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

Steven J. Maranville, Ph.D., was employed as an associate professor at Utah

Valley University (UVU).  He now appeals from a district court order that granted

the Defendants-Appellees' motion for summary judgment in his civil suit challenging

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

their refusal to grant him tenure.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Before accepting employment at UVU, Dr. Maranville was a tenured professor at the University of Houston, Texas.  In December 2008, UVU offered him "a tenure-track faculty position [as an associate professor] in the Department of Management."  Aplt. App., Vol. I at 112.  UVU's offer specifically provided that although Dr. Maranville would not have to submit a formal application to obtain tenure at UVU, he would nevertheless have to successfully complete "a one-year probationary period" and obtain "the written recommendation of [the] Department Chair and Dean."  *Id.*  Dr. Maranville accepted the offer.

In May 2009, UVU sent Dr. Maranville a "Letter of Appointment," providing that his appointment as an associate professor would run from September 2009 through June 2010.  *Id.* at 114.  Additionally, the letter reiterated that UVU would "provide tenure . . . after successful completion of a one-year probationary period" and upon "the written recommendation of [the] Department Chair and Dean."  *Id.*

"[V]ery early" in the probationary period, students began to complain about Dr. Maranville.  Aple. Supp. App. at 269.  According to the Department Chair, Dr. Scott Hammond, the complaints "were the worst [he had] ever seen."  *Id.* at 276.  Indeed, written student evaluations of Dr. Maranville indicated that he yelled at students and humiliated them in front of the class, and that he was rude and

- 2 -

disrespectful.  Many students reported that he "was the worst teacher/educator [they had] ever come across."  *Id.* at 239; *see also id.* at 240, 254, 256, 258, 260, 261.[1]

Because of the complaints, Dr. Hammond told Dr. Maranville that "external evaluators" would be observing some of his classes.  *Id.* at 270.  But the evaluators, one of whom was Dr. Hammond, identified no concerns.

In February 2010, shortly after the beginning of Dr. Maranville's second semester, Dr. Hammond recommended to the Dean of UVU's Business School, Dr. Ian Wilson, that a tenure decision be delayed for a year.  Dr. Hammond explained that while Dr. Maranville had "been very receptive to suggestions for improvement," "student complaints ha[d] persisted."  *Id.* at 301.  Dr. Wilson then recommended to his superior, the Associate Vice President of Academic Affairs, Dr. Mohammad El-Saidi, that Dr. Maranville be given "one more probationary year . . . to show improvement."  *Id.* at 304.

But in March 2010, Drs. Hammond and Wilson modified their tenure recommendations.  Because of reports from students "that [Dr. Maranville] continue[d] to yell at them, threaten them with failure, and criticize them in front of the class," Drs. Hammond and Wilson stated that they "could support the University

---

[1]     Not all of the evaluations were negative.  Indeed, some students reported that Dr. Maranville "was a great professor," was "[v]ery knowledgeable about the subject," "was encouraging if [students] showed effort," and "wanted [students] to succeed," Aple. Supp. App. at 238, 239, 244, 263.  In any event, this case does not require that we quantify the ratio of positive to negative student evaluations.

Administration if it decided to terminate Dr. Maranville at this point and give him a year to look for other work." *Id.* at 306.

Soon thereafter, the Vice President of Academic Affairs, Dr. Elizabeth Hitch, notified Dr. Maranville that she would be recommending that he not be awarded tenure, and instead, that he "be offered a one-year terminal appointment for the 2010-2011 academic year with assignments that will not include direct student instruction." *Id.* at 308.

In April 2010, UVU informed Dr. Maranville that the school's board of trustees had voted to deny tenure because of "serious concerns regarding [his] classroom behavior." *Id.* at 312. Nevertheless, as recommended by Dr. Hitch, UVU extended his appointment for two academic semesters, without teaching responsibilities.

After his final appointment expired, Dr. Maranville filed suit in state court, seeking damages. The case was removed to federal court, where it proceeded against the school and Drs. Hammond, Wilson, El-Saidi and Hitch (collectively, UVU). Dr. Maranville claimed that he was denied tenure without being afforded due process,[2] and that the denial of tenure constituted a breach of contract and a breach of the covenant of good faith and fair dealing. After discovery, the parties filed motions

---

[2] Although Dr. Maranville pleaded federal and state due-process claims, he does not pursue the state claim on appeal. It is therefore waived. *See City of Colo. Springs v. Solis*, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009) (arguments not raised in the opening brief are waived).

for summary judgment. Dr. Maranville sought partial summary judgment on his due-process and breach-of-contract claims. UVU sought summary judgment on all the claims, arguing, among other things, that the individual defendants were entitled to qualified immunity for any constitutional violation. The district court granted the defendants' motion, determining that there was no constitutional violation and that the common law claims were without merit.

## DISCUSSION

### I. Standards of Review

We review de novo the district court's grant of summary judgment. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1148 (10th Cir. 2005). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's function "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (internal quotation marks omitted). In making that determination, we "view the evidence in the light most favorable to the" party opposing summary judgment. *Id.* (internal quotation marks omitted).

Where, as here, defendants have raised a qualified-immunity defense, we must determine (1) whether "the [defendants'] actions violated a federal constitutional or statutory right," which (2) "was clearly established at the time of the . . . unlawful conduct." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (internal

- 5 -

quotation marks omitted). But "[w]e need not reach the question of whether the individual defendants are entitled to qualified immunity if we determine, after a de novo review, that plaintiffs failed to sufficiently allege the violation of a constitutional right." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

## II. Procedural Due Process

The procedural safeguards of due process apply in the employment context if the employee possesses a property interest in the employment. *See Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003) (per curiam). More specifically, the employee must have "a legitimate expectation in continued employment." *Hesse v. Town of Jackson*, 541 F.3d 1240, 1245 (10th Cir. 2008) (internal quotation marks omitted). "We determine whether such a property interest exists by looking at state law." *Id.* (internal quotation marks omitted).

In Utah, employment is presumed to be at-will. *Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 976 (Utah 2009). To alter that arrangement, "[t]here must be a manifestation of the employer's intent to guarantee employment that is communicated to the employee and sufficiently definite to operate as a contract provision." *Id.* (brackets and internal quotation marks omitted).

Dr. Maranville argues that he was entitled to due process before being denied tenure because UVU promised that he would receive tenure in one year, he had previously been a tenured professor, and UVU's tenure rules were incorporated into his employment contract. UVU responds that while Dr. "Maranville may have had a

- 6 -

subjective expectation or hope of attaining tenure and continuing employment, . . . unless and until the express conditions were met, he did not have a protected property interest beyond the one-year term of either of his contracts." Aple. Br. at 23 (internal quotation marks omitted). We agree with UVU.

Tenured professors are generally viewed as "possess[ing] a property interest deserving of procedural due process protections." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 517 (10th Cir. 1998); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972). But "[a] nontenured instructor whose employment contract is based upon a one-year appointment does not have a constitutionally recognizable property right." *Moore v. Utah Technical Coll.*, 727 P.2d 634, 637 (Utah 1986). And the fact that a professor is on a track for tenure does not establish a property right. *See Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000).

There is no dispute that Dr. Maranville was not tenured. And although he was on a tenure track, his initial contract with UVU and his appointment letter were clear that he could get tenure only "after [the] successful completion of a one-year probationary period" and only upon "the written recommendation of [Drs. Hammond and Wilson]." Aplt. App., Vol. I at 112, 114. We need not decide whether there is any dispute regarding Dr. Maranville's successful completion of the probationary period, as there is no dispute that he failed to receive either Dr. Hammond's or Dr. Wilson's recommendation for tenure.

Contrary to Dr. Maranville's assertion, his initial contract with UVU contains no promise, either explicit or implicit, that he would automatically be tenured after one year. Again, tenure was conditioned on recommendations from Drs. Hammond and Wilson, which he did not get. That fact is unaltered by Dr. Maranville's prior tenure at a different university or his understanding, based on a conversation in November 2008 with then Associate Vice President of Academic Affairs, Dr. Bruce Parker, that his probationary process would be "routine." *Id.*, Vol. II at 550. Indeed, in his deposition, Dr. Maranville explained that the process was routine because he did "not need to put together a tenure portfolio." *Id.* Dr. Maranville did not testify that the process was routine because there were no conditions precedent to obtaining tenure. Rather, he testified that Dr. Parker had indicated, and that his contract required, "successful teaching." *Id.* at 551 (internal quotation marks omitted). The evidence in this case is undisputed that both Dr. Hammond and Dr. Wilson withheld their recommendations because of problems with Dr. Maranville's teaching identified by students. In particular, students complained that he was abusive, rude, and a poor teacher.

Dr. Maranville challenges the students' complaints, noting that Dr. Hammond and another professor sat in on his class and observed no problems. But Dr. Maranville was not denied tenure on what the evaluators observed. Instead, Dr. Hammond and Dr. Wilson withheld their tenure recommendations because of the

student complaints. And, as Dr. Hammond reported, the complaints were the worst he had ever seen.

Next, Dr. Maranville argues that he had a property interest in continued employment because UVU "expressly incorporat[ed] the laws and regulations governing the University into his contract." Aplt. Opening Br. at 16. He then adds that "[t]hose laws and regulations . . . included due process rights in tenure decisions." *Id.* at 21 (internal quotation marks omitted). But he offers no discussion as to how UVU's "laws and regulations" actually show he had a legitimate expectation of continued employment. We "will not craft a party's arguments for him," *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999), nor do we "consider arguments that are . . . inadequately presented[ ] in an appellant's opening brief," *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

In any event, we note that Dr. Maranville is apparently "attempt[ing] to construct a property interest out of procedural timber, an undertaking which the Supreme Court [has] warned against." *Bunger v. Univ. of Okla. Bd. of Regents*, 95 F.3d 987, 990-91 (10th Cir. 1996). As we discussed in *Bunger*, "[t]he categories of substance and procedure are distinct. 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Id.* at 991 (ellipsis and internal quotation marks omitted). Thus, any procedural steps designated by UVU for general tenure decisions would not grant Dr. Maranville a property interest in continued employment. "Only a formal guarantee of continuing

- 9 -

employment under color of state law—of which academic tenure is a classic

example—would have created a property interest." *Id.*

Because there is no genuine dispute that Dr. Maranville lacked a property

interest in continued employment at UVU, the individual defendants are entitled to

summary judgment on Dr. Maranville's due-process claim. To the extent

Dr. Maranville attempts to advance his due-process claim against the school or its

employees in their official capacities, such an attempt is barred by the Eleventh

Amendment. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

### III.  Breach of Contract[3]

Dr. Maranville argues that UVU breached his employment contract by

(1) denying him tenure; and (2) failing to follow UVU's tenure procedures.

We reject the argument.

Regarding the denial of tenure, as discussed above, Dr. Maranville failed to

satisfy the conditions of his contract to obtain tenure. Specifically, he obtained

neither Dr. Hammond's nor Dr. Wilson's recommendation for tenure. Consequently,

UVU's denial of tenure was not a breach of contract. *See McArthur v. State Farm

Mut. Auto. Ins. Co.*, 274 P.3d 981, 988 (Utah 2012) (observing that "parties whose

obligations are dependent on a condition precedent have no right to contract remedies

until that condition is fulfilled and a binding covenant is thereby formed").

---

[3]     It appears Dr. Maranville has conceded that his breach of contract claim is applicable against the school, but not against the individual defendants named in this case, as they were not parties to the employment contract.

As for Dr. Maranville's contention that he was promised and then denied

procedural protections in the tenure-decision process, he cites language in his

appointment letter, "present[ing] [his] salary information and appointment as

Associate Professor for the 2009-2010 academic year, *subject to the laws and*

*regulations governing the University*." Aplt. App., Vol. I at 114 (emphasis added).

Dr. Maranville contends that the emphasized language incorporated UVU's tenure

procedures into his employment contract. Those procedures include notifying a

tenure applicant of the recommendations made by the school's tenure-review

committee and department chair, and then giving the applicant opportunities to

respond.

We decline to reach Dr. Maranville's failure-to-follow-procedures contention

because he did not advance it in the district court. Dr. Maranville's only

breach-of-contract allegation in the complaint was that UVU "fail[ed] to grant

[him] tenure after [he] fulfilled his duties under the contract." *Id.* at 27. Consistent

with that limited allegation, he expressly rejected equitable relief, such as a

post-deprivation hearing. *Id.* at 32; *id.*, Vol. II at 488. And in his summary-judgment

filings, he tied UVU's failure to follow its tenure procedures to his theory, which we

rejected above, that those procedures created a constitutional due-process right. *See*

*id.*, Vol. I at 61 (arguing in his motion for partial summary judgment that "UVU's

institutional policies on tenure" established "due process rights in tenure decisions");

*id.* at 78 (arguing in his motion for partial summary judgment that he was entitled to

relief on his due-process and contract claims "because he had a property interest in continued employment"); *id.*, Vol. II at 455 (stating in his opposition to UVU's summary judgment motion, in a section entitled "UVU's Breach of Contract," that "the primary question for the [District] Court is . . . [whether] the signed offer . . . and Appointment Letter[,] . . . together with the institution's own tenure rules . . . gave Dr. Maranville *a reasonable expectation of continued employment*" (emphasis added)).  Even on appeal, he states that he "raised the breach of contract issue [concerning the failure to follow UVU's tenure procedures] in the context of UVU's failure to provide him due process."  Aplt. Opening Br. at 43.

"As a general rule, we do not review matters raised for the first time on appeal."  *Shell Rocky Mountain Prod., LLC v. Ultra Res., Inc.*, 415 F.3d 1158, 1164 (10th Cir. 2005).  Dr. Maranville offers no reason for us to depart from that rule and reach his breach-of-contract contention that UVU failed to follow its own tenure procedures.[4]

---

[4]     Further, even if Dr. Maranville had raised this contention in the district court, and if he could show that UVU's tenure procedures were part of his contract, he would still be saddled with his failure to show an improper denial of tenure.  In other words, even if he were afforded UVU's tenure procedures, his failure to obtain the tenure recommendations of Drs. Hammond and Wilson would nevertheless preclude tenure.

**IV. Breach of the Implied Covenant of Good Faith and Fair Dealing**

"Under the covenant of good faith and fair dealing, the parties constructively promise[ ] that they w[ill] not intentionally do anything to impair the other party's right to receive the fruits of the contract." *Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 60 (Utah App. 1996). Dr. Maranville argues that Drs. Hammond and Wilson violated this covenant by withholding their tenure recommendations "based solely on some negative student evaluations, without giving him a chance to appear and defend himself." Aplt. Opening Br. at 49. But neither Dr. Hammond nor Dr. Wilson was a party to the contract. Moreover, UVU's reliance on their tenure recommendations, which were based on a multitude of negative student complaints, does not suggest an intention to impair Dr. Maranville's contract rights. And although UVU did not give Dr. Maranville an opportunity to refute the students' complaints and challenge the denial of tenure, the implied covenant of good faith and fair dealing cannot be used to impose upon an employer the duty to end an employee's service only upon good cause. *See Heslop v. Bank of Utah*, 839 P.2d 828, 840 (Utah 1992). Consequently, summary judgment was appropriately granted on this claim for relief.

CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Wade Brorby
Senior Circuit Judge

- 13 -